LABADIE *v.* BOEHLE.

1. EVIDENCE—WRITTEN CONTRACTS—PRELIMINARY VERBAL AGREE-
MENTS.

> Where parties have reduced their agreements to writing, all
> preliminary verbal agreements are merged therein and the
> writing is the sole evidence of the contract between the parties.

2. SAME—AGREEMENT PARTIALLY REDUCED TO WRITING.

  Writings between the parties are not the sole evidence of the agreement between the parties when those writings are entered into in pursuance and execution of the agreement and evidence only a part of the agreement.

3. VENDOR AND PURCHASER—RESCISSION—EVIDENCE OF REPRESENTATION INDUCING PURCHASE OF SUBDIVISION.

  Evidence as to representation of vendor that adjacent plats had been laid out and restricted in a manner uniform with centrally located subdivision sold plaintiff and would be continued in such respects as high-grade subdivision property *held*, admissible in her suit for rescission of transaction whereby she contracted to make such purchase which would not have been made except for such representation.

4. SAME—RESCISSION—REPRESENTATIONS—VACATION OF ADJACENT PLATS.

  Purchaser of subdivision from vendor who, upon purchaser's insistence, represented that two adjacent tracts on either side would be continued as high-grade subdivision property as far as layout and restrictions are concerned *held*, entitled to rescind transaction where vendor caused adjacent plats to be vacated and turned into much less desirable subdivision property.

5. SAME—RESCISSION—DELAY—VENDOR'S BREACH OF PROMISE INDUCING CONTRACT.

  Purchaser of subdivision who commenced suit for rescission of transaction promptly after discovery of fact that vendor had secured vacation of plats on either side of one sold plaintiff, contrary to his representation, inducing her purchase, that they would be maintained as high-grade subdivision property uniform as to layout and restrictions with one sold her, *held*, not barred by laches or delay from rescission.

Appeal from Wayne; Miller (Guy A.), J. Submitted January 12, 1939. (Docket No. 64, Calendar No. 40,347.) Decided March 9, 1939.

Bill by Sarai W. A. Labadie against Henry Boehle and wife to rescind a purchase of real estate, to discharge a mortgage and restrain foreclosure, to estab-

lish a lien on real estate for the money paid thereon, and for other relief. Decree for plaintiff. Defendants appeal. Affirmed.

*Harold H. Emmons* and *Harold H. Emmons, Jr.,* for plaintiff.

*Henry Messimer* (*Elmer H. Groefsema,* of counsel), for defendants.

POTTER, J.   Plaintiff filed a bill in chancery to rescind the purchase of certain real estate in Wayne county, to discharge a real estate mortgage thereon, to restrain the foreclosure of such mortgage, to establish a lien on real estate for the money paid down thereon, and for other relief. From a decree for plaintiff, defendants appeal.

The case is here on an extensive record, has been fully briefed and exhaustively argued. The trial court filed an opinion therein which is sustained by the proofs. It is adopted as the opinion of this court.

"Prior to 1924 the defendant, Henry Boehle, owned a 160-acre tract of land in Ecorse township. In 1924 he and Mary Boehle, his wife, executed a conveyance of a part of said property, and in 1925, of the balance of said property, to Robert M. Drysdale and his associates. The latter eventually merged in the organization of the Humphrey, Flanders, Drysdale Company. In 1925 two plats were executed, covering respectively the north and middle one third of this 160-acre tract. These two plats, although separately executed, correspond in street names, sizes of lots, and general layout. In 1926 the southerly one third was conveyed by the Humphrey, Flanders, Drysdale Company to Karen Hartwick. The southerly one third was subsequently platted under rather peculiar conditions. A golf course was to be laid out upon it and was to be maintained for

eight years, subsequent to which time the plat was to become effective. This plat also corresponds in layout, names of streets, and other particulars with the plats of the northerly and middle thirds. So far as the record shows, no lots were ever sold in the southerly or Hartwick portion of the plat. Work was actually done on the golf course, but the testimony indicates that that work was subsequently abandoned for lack of funds. Lots were sold in the northerly and middle subdivisions and a general plan of restriction was established. The lots that were sold were under land contracts which were identical in terms for both subdivisions. Owing to the business conditions, the sale of lots was not as anticipated, and in March of 1930 the middle third as subdivided was quitclaimed back to the defendant Boehle by the Humphrey, Flanders, Drysdale Company. Subsequently the northerly third was likewise conveyed back to him. At the time when the transactions occurred between the plaintiff and the defendants, the situation was that Mr. Boehle had re-acquired the title to the middle third. He held a mortgage interest in the southerly third and still retained title subject to the contract of sale to the northerly third. Conditions being as indicated, the defendant Boehle verbally authorized one Montrie to procure a purchaser for the middle third, which was known as Humphrey, Flanders, Drysdale Subdivision No. 1. Montrie got in touch with one Geiermann and Mr. Geiermann presented the tract to Mrs. Labadie for her consideration. Mrs. Labadie at that time was possessed of means and a desire to enter into real estate operation with a view of herself constructing homes and reselling them. She desired a tract that would be secure from the encroachment of lower-class buildings than those that she desired to construct. She examined the property in question and also the northerly third and the southerly third. She held many conferences with Mr. Geiermann and went at length into all matters con-

nected with the nature of the land in question, the subdivision, the restrictions, the likelihood of the continuance of those restrictions and the probability of the development of the entire 160-acre tract as a high-class residential section.

"On two occasions Mr. Boehle was present. Mr. Geiermann was acting as the agent for Mr. and Mrs. Boehle, and eventually secured written authority to represent them. This occurred when he discovered that Mr. Montrie had no such authority. Eventually a contract was entered into by which Mrs. Labadie undertook to purchase the property for $55,000 and paid $500 down to bind the original agreement. At this time Mrs. Labadie delivered what might be considered to be an ultimatum as far as her purchase of the property was concerned. She stated at a meeting at which Mr. Boehle was present, but where Mr. Geiermann on his behalf did most of the talking, that she must have assurance of a continuance of the conditions on both sides of Subdivision No. 1, and if she were not assured of the continuance permanently of the subdivisions on the northerly and southerly thirds of the tract as high-grade properties she would not for a moment consider a purchase.

"There was a great deal of talk in regard to that subject, but it all resolved itself into her firm stand that she would not purchase except upon that one consideration. She was assured very definitely that it not only was Mr. Boehle's intention that the property would continue to be of that nature, but that it was impossible for the nature of the northerly and middle thirds at least to be changed because the rights of third parties had intervened.

"A considerable number of lots had been sold upon contracts containing the identical restrictions which are shown in the contract attached to the bill of complaint in this case and marked Exhibit B (A) thereto. It was stated on behalf of Mr. Boehle that those restrictions could not be altered by him because he was bound to maintain them and the sub-

dividers were equally bound. Substantially the statement was made to her: You have our guaranty these contracts are your guaranties because they are outstanding and they must be performed.

"Influenced by these representations as a part of the consideration for the deal, she executed her agreement to purchase on the terms stated above. Abstracts were prepared and examined by Mr. James Gibbons who found the title materially defective and gave it as his opinion that it was not merchantable. It then appeared that Subdivision No. 1 was subject to more than $20,000 of unpaid taxes and that there was danger that within a few weeks time these taxes would double by the accrual of penalties. It further appeared that Mr. Boehle had no means to meet those taxes. To meet this situation, and at his request, Mrs. Labadie advanced $23,500, for which advance she secured a mortgage from Mr. Boehle and wife. This money was to be used and was used to pay the back taxes and relieve the property from tax liens. After the lapse of considerable time and the making of considerable effort, the title was at last rendered merchantable to Mr. Gibbons' satisfaction, with the exception that the outstanding sale of lots could not be gotten rid of. A deduction of $3,000 from the purchase price of $55,000 was made on account of these three outstanding contracts, and eventually Mrs. Labadie purchased the property known as Subdivision No. 1 for a purchase price of $52,000. She received credit for the moneys already advanced and paid enough more to make her cash payment $33,000. She gave a mortgage back for the remaining $19,000. This mortgage is now in process of foreclosure by advertisement.

"After the closing of this deal Mrs. Labadie's business affairs became involved and she was unable to continue her plan of development. Business conditions became so bad that it would have been im-

possible to sell houses if she had built them. Incidentally, although it does not appear to be important in this case, there is an agreement contained in the land contracts providing that the vendors in these contracts are to put in certain improvements. Those improvements never were put in. Some of them are now being installed under Works Progress Administration assistance.

"The transaction between Mrs. Labadie and the defendants was finally closed in 1931. She was compelled to leave the city of Detroit and has spent very little time in Detroit between 1931 and 1937.

"In 1932 proceedings were taken by Mrs. Hartwick, which were acquiesced in and participated in by the defendants, resulting in the vacation of the plat of the southerly one third, known as the Hartwick tracts. The petition looking to this end was filed June 13, 1932. May 9, 1935, the defendants filed a petition for the vacation of the plat on the northerly one third of the tract, and those proceedings resulted also in the vacation of that plat. Mrs. Hartwick still owns the southerly one third subject to a mortgage running to Mr. Boehle. Mr. Boehle owns the northerly one third and is now proceeding to sell the same on a so-called small farm plan, without restrictions.

"A part at least of the northerly 53 acres of the tract has been so sold and houses or shacks running in value from a few hundred dollars up to 15 or 16 hundred dollars have been erected. This plan of development is vitally different from the plan of development which is set forth in the original subdivision and the plan of restriction adopted in connection therewith. Plaintiff claims that action of the defendants in participating in and acquiescing in the vacation of the plat on the southerly one third of the tract and in causing the vacation of the plat on the northerly one third of the tract and in totally changing the character of the development amounts

to such a departure from the original understanding between the parties as to give her the right of rescission. Defendant claims that the contract between the parties was reduced to writing in the shape of a warranty deed conveying the property and the $19,000 mortgage given back upon the execution of the deal and no contemporaneous verbal agreements can be introduced as a basis for rescission. It is the law of the State undoubtedly that where parties have reduced their agreements to writing that all preliminary verbal agreements are merged therein and the writing is the sole evidence of the contract between the parties. It also is the law of the State that writings between the parties are not the sole evidence of the agreement between the parties when those writings are entered into in pursuance and execution of the agreement and evidence only a part of the agreement.

"Under the circumstances of this case it is clear that the latter rule applies. It is established by evidence of the most clear and convincing nature that Mrs. Labadie laid down as a condition of her purchase that she must be assured of a continuance of the situation to the north and south of her property. By the same degree of evidence it is established that she was definitely assured that it was Mr. Boehle's then intention to continue, so far as he was concerned, the high character of the whole development; that it was impossible for him to change the nature of the development because he was bound, and the other parties interested in the subdivisions were bound, by the fact that sales had already been made under contracts which were enforceable by the purchasers; that those contracts were highly restricted; and at the time when the purchase was made the contracts were exhaustively examined by Mrs. Labadie, Mr. Geiermann, and at times in the presence of Mr. Boehle. It is perfectly clear that Mrs. Labadie would not have purchased the property

had it not been for the definite representation of the present intention on Mr. Boehle's part to continue that character of the subdivision and the further representation that it was impossible as a matter of fact and law for him to change that condition. Under the circumstances the conclusion is clearly to be drawn that she would not have purchased except in reliance on conditions to the north and south of her and that she made that situation perfectly clear to the parties, that the defendants knew of her position and assured her that she would be protected by them. Under the circumstances a case is presented therefore where Mr. Boehle agreed as a part of the consideration of the transaction that so far as he was concerned he would continue to protect that entire 160-acre tract as a high-grade subdivision and that it would continue to be a uniform real estate development, uniform in restrictions and layout with the Subdivision No. 1 which she was purchasing.

"It is very plain that he has been one of the moving parties in the entire change of nature of the northerly and southerly one thirds and in the use thereof. These steps were taken by him without advising Mrs. Labadie that any such thing was being done. She had no notice that the southerly plat and the northerly plat were being vacated. There is no evidence that she had any knowledge that that was being done, and her testimony is clear and direct to the contrary. She did not even know that her mortgage was being foreclosed until she went to Mr. Boehle in August of 1937, at which time he told her in response to her request for lenience that the property was being foreclosed. She then consulted counsel and it was not until an investigation of the various subdivisions was made by him that it was discovered that northerly and southerly plats had been vacated. He has therefore destroyed by his own act an important part of the consideration for which Mrs. Labadie stipulated on her purchase. No

charge of laches or delay can be made as against her, nor can any charge be made that she has not acted in perfect good faith. She is asking for a rescission. The defendants have acted in an inequitable manner. There is nothing that would prevent a court of equity from interfering in her behalf, and she is therefore entitled to a decree rescinding her purchase. That decree may provide for such rescission and for the repayment of the amount of money which she paid upon the purchase, namely, $33,000 with interest from the date of payment, less the amount of accrued and unpaid taxes upon the property since the time when the deal was closed. In the event that the defendants do not repay the moneys, the plaintiff may have a lien upon the property, and if such repayment is not made within a period of 60 days, her lien may be foreclosed by sale, the amount of the moneys due under the decree to be met first out of the proceeds of the sale and any balance to be repaid to Mr. Boehle. The $19,000 mortgage will be cancelled, and naturally further proceedings for the foreclosure of the same will be restrained.

"Plaintiff may recover her costs to be taxed."

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, CHANDLER, and MCALLISTER, JJ., concurred. NORTH, J., took no part in this decision.