MASON *v.* LEE-BERT, INC.

1. CONTRACTS—WRITTEN PURCHASE ORDER—PAROL EVIDENCE OF PRIOR DEALINGS—SALE OF PLASTIC THREAD.

Where purchase order upon which plaintiff relied as a written contract for defendant's purchase of plastic thread recited that the material was "to be taken as agreed," the selling price therein was not definitely fixed, plaintiff did not accept it in writing, the material shipped to defendant and accepted by it did not conform to specifications as to sizes of thread, parol evidence with reference to prior dealings between, and the agreement of, the parties was admissible especially where it did not contradict but merely explained the meaning of the order and it is obvious that the parties did not conduct their transactions on the theory that such were controlled by, and wholly subject to, the express provisions of the written order relied on by plaintiff.

2. SAME—MERGER OF ORAL AGREEMENTS INTO WRITING.

Where parties have reduced their agreements to writing, all preliminary verbal agreements are merged therein and the writing is the sole evidence of the contract between the parties.

3. SAME—WRITING AS EVIDENCE OF PART OF AGREEMENT.

Writings between the parties are not the sole evidence of the agreement between the parties when those writings are entered into in pursuance and execution of the agreement and evidence only a part of the agreement.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur, Sales, §§ 284, 288.
[2] 12 Am Jur, Contracts, § 232.
[2] 20 Am Jur, Evidence, § 1099.
[3] 20 Am Jur, Evidence, §§ 1106, 1135.
[4] 46 Am Jur, Sales, § 589.
[5, 7] 46 Am Jur, Sales, §§ 251, 254 *et seq.*
[6] 47 Am Jur, Setoff and Counterclaim, §§ 11, 28.
[7] 46 Am Jur, Sales, §§ 666, 668, 758 *et seq.*, 763.
[9] 14 Am Jur, Costs, § 12.

4. SALES—CANCELLATION—EVIDENCE.

In nonjury assumpsit action to recover the selling price of plastic thread, alleged to have been sold and delivered to defendant pursuant to a written contract, trial judge's finding that order under which plaintiff acted in making the shipment was cancelled prior thereto, *held,* not against the preponderance of the evidence.

5. SAME—ACCEPTANCE—EVIDENCE.

The mere unloading and storage of a shipment of plastic thread in defendant's establishment did not constitute an acceptance of it, where it appears that defendant's agent had not been advised of the cancellation of the order under which it was shipped and immediately following receipt of the shipment defendant's general manager advised plaintiff of the nonacceptance and persisted in refusing to take it.

6. SET-OFF AND RECOUPMENT—STATUTORY REQUISITES.

The matter of set-off is governed by statute setting forth the requisites thereof, which statute specifically provides that such a counterclaim must be based on judgment or decree, or upon contract express or implied (CL 1948, § 615.1).

7. SAME—OVERPAYMENTS FOR MERCHANDISE.

In nonjury action of assumpsit for the selling price of a quantity of plastic thread wherein defendant interposed counterclaim for alleged overpayments made by it to plaintiff for other shipments of such merchandise received and accepted by it, trial court's finding that defendant was not entitled to recover is affirmed, where it appears that the defendant received the merchandise and made payments therefor notwithstanding the knowledge that its manager then had, and without protest or question (CL 1948, § 615.1).

8. SAME—STORAGE—CONTRACT—VALUE—EVIDENCE.

In nonjury action of assumpsit for selling price of a quantity of plastic thread, wherein defendant sought to recover storage charges of the merchandise, testimony that defendant billed plaintiff $1.50 per day for such storage but failing to show there was any agreement between the parties with reference to it or that such charge was reasonable warranted the trial judge in disregarding the claim.

9. COSTS—FAILURE OF EITHER PARTY TO FULLY PREVAIL.

No costs are allowed in action for selling price of plastic thread, in which defendant interposed counterclaim for alleged overpayments for other such merchandise previously

accepted and paid for, where neither party has fully prevailed.

Appeal from Saginaw; Holland (Robert T.), J. Submitted September 12, 1949. (Docket No. 81, Calendar No. 44,297.) Decided October 10, 1949.

Assumpsit by George W. Mason against Lee-Bert, Inc., a Michigan corporation, for sales price of merchandise. Counterclaim by defendant against plaintiff for overpayment. Judgment of no cause of action. Plaintiff appeals. Defendant cross-appeals. Affirmed.

*William C. O'Keefe* and *James V. Finkbeiner,* for plaintiff.

*Hugo E. Braun,* for defendant.

Carr, J. Plaintiff brought suit in assumpsit in circuit court to recover the selling price of certain merchandise alleged to have been sold and delivered to defendant pursuant to a written contract. Defendant by answer put in issue the claim of the plaintiff as to the nature of the contractual relationship between the parties, asserting in substance that it was an oral agreement, and specifically denied that the merchandise in question was accepted by it. Defendant also pleaded a counterclaim, alleging therein the right to recover from plaintiff the aggregate of certain overpayments made by it to plaintiff for other shipments of merchandise received and accepted by it. The trial court, hearing the matter without a jury, came to the conclusion that on the basis of the proofs submitted neither party was entitled to recover. Judgment was entered accordingly, and both parties have appealed.

The case arises out of business dealings between the parties in 1944. Plaintiff was engaged in certain manufacturing operations involving the use of plastic thread, and, it is claimed, in the sale and distribution of such material to others. On or about February 2, 1944, he contacted the general manager of the defendant corporation, stating in substance that in order to acquire the plastic thread necessary for his own business he was compelled to make purchases of other thread that he was unable to use and therefore wished to resell. It is conceded that at the time defendant was greatly in need of such material, and an agreement was entered into between the parties that plaintiff, after selecting from the material shipped to him such portion as he wished, would sell the balance to defendant.

Under date of February 12, 1944, a written order was forwarded by defendant to plaintiff for plastic thread designated as Saran Monofilament, said order reading as follows:

"Telephone 3–1811     110 So. Second St.     PURCHASE ORDER
       LEE-BERT INC.                This Order No. Must Appear
       Products in Plastics                  On Your Invoice
                                                 #342

                    Saginaw, Mich., February 11, 1944

TO     Mr. George W. Mason
       Ottisville, Michigan               TERMS . . . . . . . . . .

Please Enter Our Order As Follows

Quantity                    Items                        Price
Approximate                                      *Approximate Cost*
  5,000 lbs.
    to
  7,000 lbs.        Saran Monofilament—          $2.39½ to
                     .010″ to .013″              $2.52 per pound
  8,000 lbs.
    to
 10,000 lbs.        Saran Monofilament—
                     .029″ to .033″              $2.20 per pound

500 to 700 lbs.     Saran Monofilament—
                     .017″                       $2.35 per pound

         The above material to be taken as agreed, allowing you
      to keep that portion that you select and deem necessary
      for your own business.

SHIP VIA                        WHEN     As agreed.
DEPARTMENT
ACCOUNT                                         LEE-BERT, INC.
                         Per (Signed)   R. LEE GILBERT"

On February 24th following, a second written order was given by defendant to plaintiff, in part for thread of a different diameter than that specified in the first order. This order was filled, in part at least, and the merchandise shipped was paid for by defendant. Other shipments, some 4 or 5 in number, were also made from time to time, apparently in accordance with verbal orders, the last of such shipments being made on or about April 28, 1944. On receipt of each shipment the defendant paid the invoice price. In some instances the thread shipped answered the specifications as to sizes set forth in the order of February 11th, and in other instances

threads of different sizes were shipped and accepted.

Defendant claimed, and the trial court found, that at the time of the making of the agreement between the parties early in February, 1944, plaintiff represented and promised that his resales to the defendant would be made at cost, or approximately at cost, to him. Defendant's general manager, R. Lee Gilbert, testified that plaintiff also stated that the price to defendant would run between $2.20 and $2.50 per pound. The invoice prices of the goods shipped, except one minor shipment which was billed at $1.44 per pound, were substantially in accord with plaintiff's statement as to the prices that defendant might expect to pay.

On May 6th, after the shipments above referred to had been received by defendant and the invoice prices paid, Mr. Gilbert wrote to plaintiff a letter in which he made the following statement:

"Regarding .012″ Monofilament, I do not believe that you had better order any of this for us, as our present inventory is running considerably higher than we had originally planned, and we cannot afford to tie up too much more money, and we would ask that you please cancel our order for .012″, and I believe this then will wind up our entire orders with you, and that we will have no more material coming. Will appreciate a letter from you acknowledging this cancellation."

While the letter did not so state, it is defendant's claim that its manager undertook to cancel the order for Saran Monofilament because of a belief, or at least a strong suspicion on his part, that plaintiff was disregarding his promise to make resales to defendant at the approximate cost to him. On receipt of the letter plaintiff contacted Mr. Gilbert by telephone. The parties are not in accord as to the details of the conversation. Plaintiff claims that Mr. Gilbert assured him in substance that if he would

withhold shipment for 30 days the merchandise would be accepted. The manager, testifying as a witness in defendant's behalf, denied any such promise on his part, claiming that he advised plaintiff that the shipment, if made, would not be accepted.

On June 13th following, shipment of the merchandise for which plaintiff seeks to recover in the instant case was made to defendant by truck. One of defendant's employees who, it is claimed, did not know of the cancellation, received the merchandise and paid the transportation charges. When defendant's manager was advised as to the situation, he immediately wrote plaintiff, refusing to accept the shipment but suggesting that defendant might keep 1,000 pounds of the material if plaintiff would otherwise dispose of the balance of approximately 5,000 pounds. Negotiations between the parties failed to result in any settlement of the controversy.

It is the theory and claim of the plaintiff that the written order of February 11, 1944, constituted the contract, that it was complete and unambiguous in its terms, and that parol evidence with reference to prior dealings between the parties was not admissible. The trial court held otherwise, and we think correctly so. It will be noted that the order in question specified that the material should be "taken as agreed." implying an understanding of the parties with reference to the matter. The selling price was not definitely fixed. The instrument was designated merely as a purchase order, and there is no claim on the plaintiff's part that he accepted it in writing. The fact that much of the material shipped by plaintiff to defendant and paid for by it did not conform to the specifications as to sizes of the thread as set forth in the order in question is also significant. Obviously the parties did not carry on their business transactions on the theory that such were controlled by, and wholly subject to, the express provi-

sions of the written order relied on by plaintiff. Rather, as the trial court apparently concluded, the actual agreement under which the parties operated was verbal, and the orders, both written and oral, were accepted by plaintiff and filled on that basis. It is a fair conclusion also, based on the testimony in the case, that the written orders were prepared and forwarded at the insistence of an officer of the bank that was financing plaintiff in his operations.

In the recent case of *Tunley* v. *Beall,* 323 Mich 108, 112, we quoted from the opinion in *Labadie* v. *Boehle,* 288 Mich 223, as follows:

" 'It is the law of the State undoubtedly that where parties have reduced their agreements to writing that all preliminary verbal agreements are merged therein and the writing is the sole evidence of the contract between the parties. It also is the law of the State that writings between the parties are not the sole evidence of the agreement between the parties when those writings are entered into in pursuance and execution of the agreement and evidence only a part of the agreement.' "

On the record before us it is apparent the orders given by defendant to plaintiff merely carried out the agreement as made previously and were not intended by the parties to evidence the entire contract. It follows that there was no error on the part of the trial court in admitting parol evidence for the purpose of showing the agreement of the parties. Such evidence, it may be noted, did not contradict the orders but rather tended to explain their meaning, why they were given, and their proper place in the transactions between plaintiff and defendant.

Plaintiff further contends that the trial court was in error in holding that the order under which plaintiff acted in making the shipment on June 13, 1944, above mentioned, was cancelled prior thereto. Mr. Gilbert's letter of May 6th, above quoted in part,

clearly specified that defendant did not want any
further shipment of Saran Monofilament from the
plaintiff. The latter obviously so construed it be-
cause, as he stated in his testimony, he immediate-
ly called defendant's manager and attempted to per-
suade him that he should accept the goods when
shipped, claiming at the time that he (plaintiff) had
ordered them and that he would be embarrassed if
defendant persisted in its refusal to accept. As be-
fore noted, the testimony is in dispute as to the ex-
act conversation between plaintiff and Mr. Gilbert.
The trial judge determined the issue in favor of the
defendant, and we cannot say that the evidence re-
lating thereto clearly preponderates against such
conclusion.

The unloading and storage of the material in de-
fendant's establishment did not under the circum-
stances disclosed by this record constitute accept-
ance of it. *Rusk Manufacturing Co.* v. *John D. Mer-
shon Lumber Co.*, 266 Mich 99. Immediately follow-
ing the shipment of the material defendant's general
manager advised plaintiff that it would not be ac-
cepted, and the record clearly shows that defendant
persisted in that refusal. The conclusion follows
that plaintiff, under his pleadings and his proofs,
was not entitled to judgment against the defendant.
*Wigent* v. *Marrs,* 130 Mich 609.

As before noted, defendant pleaded set-off, claim-
ing in substance that plaintiff promised to sell the
Saran Monofilament to defendant for the approx-
imate cost to him, that he failed to keep such prom-
ise, and that the shipments were invoiced and paid
for at materially higher prices than plaintiff had
actually paid for the goods. In his testimony plain-
tiff denied that he made any statement or promise
of the character claimed by defendant, or that he
represented to defendant that he would sell to it
without profit on his part. The trial court, after

listening to the witnesses on both sides, found from the evidence that such statement was made substantially as claimed by defendant, and the record clearly justifies such finding. In defendant's pleading the alleged statement by plaintiff is referred to as a representation and warranty. In his brief, however, counsel for defendant claims that "The representation made by the plaintiff to the defendant as to price was and is a fraud which was alleged and proved." Defendant apparently urged his claim before the trial court on the theory that plaintiff fraudulently misrepresented to defendant the prices that he had been required to pay for the various shipments, and that defendant made its payments therefor at the prices set forth in the invoices in reliance on such misrepresentation.

The matter of set-off is governed by statute, and the requisites thereof are set forth in CL 1948, § 615.1 (Stat Ann § 27.826) which specifically provides that such a counterclaim must be based on judgment or decree, or upon contract express or implied. However, no question was raised in the trial court as to defendant's right to rest its claim of set-off on the basis indicated, and we do not find it necessary to pass on the question here. The trial judge, as his opinion indicates, came to the conclusion that defendant, in making the various payments in question for the goods received and accepted by it, did not in fact rely on any representation by plaintiff as to the various amounts that he had paid for the goods, or the statement that he would resell to defendant for what the goods cost him. The evidence supports the conclusion of the trial judge in this regard. At the time the original negotiations were in process plaintiff, as appears from the testimony of defendant's manager, stated the approximate amounts that defendant would have to pay for the material, and the invoices subsequently rendered,

following orders and shipments, were in accordance therewith. Defendant's representative considered at the time, and so indicated, that the prices named were extremely high. It is a fair conclusion, however, that defendant required the materials in question to carry on its operations, and that it was willing to pay high prices in order to obtain the merchandise. Defendant does not claim that the contract would not have been made if plaintiff had refrained from his assurance as to the resale price and the absence of any profit on his part.

The answer of defendant admits that merchandise of the character in question was "scarce and difficult to purchase." It appears further from the testimony of Mr. Gilbert that defendant could not obtain desired quantities of plastic thread from parties, other than plaintiff, with whom it was negotiating. It is a fair conclusion that defendant's business necessities furnished the reason for the making of the agreement with the plaintiff. It further appears that defendant made some purchases of material from companies manufacturing the product, and that its manager was familiar with the prices customarily charged by others in the business. The testimony of the manager further discloses that he discussed prices with others familiar with the subject.

As before noted, the letter of May 6, 1944, above quoted in part, was written by defendant's manager cancelling its order as to any further shipments because he believed, or at least considered it probable, that plaintiff was not reselling to defendant at the approximate cost to him. Mr. Gilbert's testimony indicates that such was his actual reason for writing the letter, although he did not so specify therein, and that he made his belief evident to plaintiff in the course of the conversation between the parties following the cancellation. It may be assumed that de-

fendant acted on the basis of the information that its manager had at the time as to prices at which the material was being sold by manufacturers of it and his personal knowledge of the situation. It may be noted in this connection that Mr. Gilbert was, as the record shows, an experienced and able business executive. The payments for the merchandise received and accepted by defendant were made, notwithstanding the information and knowledge that its manager had, and without protest or question.

The record does not indicate that when the letter, above mentioned, was written defendant's manager had received information in addition to that which he possessed at the time the various payments in question here were made. The conclusion is fully justified that the merchandise was paid for by defendant at the invoice prices in order to meet defendant's requirements in its manufacturing business. Defendant might have insisted that plaintiff furnish it with authentic information as to how much he had paid for the goods, but it elected not to do so, thus avoiding the possibility or probability of an interruption of its transactions with plaintiff. Having deliberately followed such course, and having made the alleged overpayments voluntarily, it should not now be permitted to complain. *Michigan Portland Cement Co.* v. *General Builders Supply Co.,* 240 Mich 701. The finding of the trial court as to the merits of defendant's claim of set-off may not properly be disturbed.

The defendant also claims that it should have been allowed judgment for storage charges of the merchandise for which plaintiff sought to recover. There is testimony indicating that defendant billed plaintiff at the rate of $1.50 per day for such storage, but it does not appear that there was any agreement between the parties with reference to it, and we find no testimony in the record tending to show that

the charge so made was reasonable. In view of this situation the trial court properly disregarded the claim.

The judgment is affirmed, but without costs, neither party having fully prevailed.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.