NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0845n.06

Nos. 10-2191; 10-2278

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Sep 26, 2013

DEBORAH S. HUNT, Clerk

UNITED PRECISION PRODUCTS )
COMPANY, INCORPORATED, )
                          )
       Plaintiff-Appellee, )
       Cross-Appellant, )
                          )    **ON APPEAL FROM THE**
v. )    **UNITED STATES DISTRICT**
                          )    **COURT FOR THE EASTERN**
AVCO CORPORATION, )    **DISTRICT OF MICHIGAN**
                          )
       Defendant-Appellant, )
       Cross-Appellee. )

BEFORE: BATCHELDER, Chief Judge, SUHRHEINRICH and SUTTON, Circuit Judges.

SUHRHEINRICH: Plaintiff United Precision Products (United) manufactured precision parts and components for aircraft engines for Defendant Avco's Lycoming Engines Division (Avco),[1] which manufactures aircraft engines. United alleged that Avco breached five multi-year blanket purchase orders for families of precision parts by terminating these agreements before their effective termination dates. Avco counterclaimed that United breached the contracts by failing to deliver the goods on time and without quality issues. The district court granted summary judgment on several claims and the remaining were tried by a jury. Both parties appeal. We affirm.

---

[1]Lycoming Engines Division is an operating division of Avco. We will refer to Defendant as Avco.

## I. Background

In 2002, United and Avco negotiated a long-term sales agreement for airplane engine parts.[2] After a series of telephone calls and emails in February 2002 between Gary Winkler, president of United, and Charles Bacher of Avco, Avco issued five blanket purchase orders for families of precision parts, including studs, valve seats, spring seats, bushings, and miscellaneous caps and plugs. The purchase orders were effective between January 1, 2002, and May 31, 2006 (except for the studs purchase order, which ended April 30, 2006). All of the purchase orders stated that the first two years of the agreement were firm. The third and fourth years were optional, with United having "the first right to negotiate pricing with [Avco] for the coming year(s)," and for the final two years, "new pricing will be negotiated (if possible) and agreed to no later than November 1st, 2003." The purchase orders also contained an "inventory buffer," which required United to maintain a "safety stock inventory of 6 weeks average usage (based on data supplied in writing by [Avco])."[3]

Although not found in the purchase orders, United claimed that Avco agreed to purchase all of the dedicated inventory (including raw materials, work in progress, and finished product), if the purchase orders were terminated for any reason. The dedicated inventory buy-out provision is found in an attachment to an email sent by Winkler to Bacher (aka "Note 5" on the "summary spreadsheet" of savings to Avco), on February 22, 2002. Bacher "confirm[ed] the key elements of the agreement," including "the notes on the summary spreadsheet" in his response email dated February 26, 2002.

---

[2]The parties have had a business relationship for a number of years.

[3]The purchase order for studs required a safety stock inventory of "5 weeks average usage."

On December 21, 2004, Avco informed United that its order for studs would be transferred to another manufacturer for "right-sizing."[4]  On January 14, 2005, Avco allegedly refused to purchase valve seats.  United eventually invoiced Avco for the dedicated inventory on all five purchase orders.  Avco refused to pay, so United sued Avco in state court for breach of contract, alleging damages for the unpaid dedicated inventory.  Avco removed the action to federal court and filed a counterclaim for breach of contract against United, alleging that United violated the purchase orders by "failing to deliver all goods on time and without quality issues."  Avco asserted that United failed to meet Avco's Supplier Quality System Requirements SQA, which are incorporated by reference in the purchase orders.  Avco claimed that it incurred substantial damages in procuring and covering parts either not delivered or delivered in breach of the quality requirements, and in re-sourcing to new vendors.

United filed a first amended complaint, seeking damages for the early termination of the studs and valve seats purchase orders.  As relevant on appeal, United alleged that Avco "breached the long-term agreement by terminating without cause [the studs order] prior to its stated expiration date" and that United suffered damages as a proximate result.

Avco moved for summary judgment on United's breach of contract claims, arguing that under the parol evidence rule the trial court should exclude evidence of the dedicated inventory buyout term because it was not contained in the five purchase orders, which, according to Avco, constituted the parties' final contract. United countered that the dedicated inventory buyout term was made part of the parties' agreement during the string of email exchanges and phone calls between

_____

[4]The parties dispute what this means, and nothing in the record adds clarification.  In the end, it does not matter for purposes of this appeal.

3

Winkler and Bacher in February 2002. The district court denied Avco's motion for summary judgment, finding a question of fact whether the parties intended the purchase orders to be a fully integrated agreement.

The district court granted summary judgment to Avco on United's studs order breach of contract claim, because nothing in the purchase order provided that termination must be "for cause," United clearly alleged that Avco terminated the agreement "for cause," United did not allege that Avco failed to give United the "first right to negotiate" new pricing for the third and fourth years of the purchase order, and United failed to submit any evidence of the latter allegation.

The district court granted summary judgment to United on Avco's counterclaim, holding that Avco failed to offer any argument or evidence of damages proximately caused by United's failure to ship quality parts in a timely manner and pointing out that this was the only allegation in the counterclaim. The district court refused to allow Avco to amend its counterclaim to add allegations regarding an extension of the parties' agreement first raised in Avco's response to United's motion for summary judgment.

A jury trial was held. At the close of United's case, Avco moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The district court denied Avco's motion, rejecting Avco's argument that evidence and testimony concerning an email referencing the dedicated inventory buy-out term should have been excluded from the jury by the parol evidence rule. The jury found that the parties' agreement contained "a term by which Avco agreed to buy all of United Precision Products' dedicated inventory upon termination of the parties' contract for any reason" and that "Avco breach[ed] the dedicated inventory buy-out term," and awarded United $175,000 in damages as a result. (United requested $572,549 in total damages).

4

Avco renewed its motion for judgment as a matter of law, or for a new trial.  The district court denied it.

Avco raises two issues in its appeal.  United raises one issue on cross-appeal.

## II. Appeal

### A.

Avco argues that the district court erred in denying Avco's Rule 50 motion for judgment as a matter of law or for a new trial under Federal Rule of Civil Procedure 59. The denial of a motion for judgment as a matter of law is reviewed de novo.  *Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 391-92 (6th Cir. 2008).  Judgment as a matter of law under Rule 50(a) "is appropriate when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  *Id.* at 392 (internal quotation marks and citation omitted).  The denial of a motion for a new trial under Federal Rule of Civil Procedure 59 is reviewed for abuse of discretion.  *In re Brown*, 342 F.3d 620, 627 (6th Cir. 2003).

The district court's decision to admit extrinsic evidence is reviewed for abuse of discretion. *See Lowe's Home Ctrs., Inc. v. LL & 127, LLC,* 147 F. App'x 516, 524 (6th Cir. 2005) (holding that the district court did not abuse its discretion in admitting parol evidence regarding the negotiation of a site development agreement where the evidence was relevant and consistent with the unambiguous terms of the lease agreement).

Avco argues that the district court erred in refusing to grant its Rule 50(a) motion because the court should have excluded the parol evidence of the dedicated inventory buy-out term, and

without that evidence, United did not have sufficient proof to present to the jury.[5] (Avco does not challenge the sufficiency of United's evidence establishing the dedicated inventory buy-out term.) Avco contends that the evidence should have been excluded because the five purchase orders Avco issued to United, which did not contain the buy-out term, became the parties' binding contract once United received the purchase orders, did not object to their terms within ten days, and began manufacturing and shipping parts to Avco, citing Mich. Comp. Laws § 440.2201(2) in support. *See* Mich. Comp. Laws § 440.2201(2) ("Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of [the statute of frauds] against the party unless written notice of objection to its contents is given within 10 days after it is received."). Avco then claims that the district court misapplied the parol evidence rule because parol evidence of the buy-out term contradicted the parties' written terms, which stated that Avco was not obligated to purchase parts from United in the last two years of the contract. *See* Mich. Comp. Laws § 440.2202(b) ("Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . by evidence of consistent additional terms unless the court finds the writing to

_____

[5]The parties agree that this case is governed by Michigan's enactment of the Uniform Commercial Code (UCC). Under the UCC, a contract for the sale of goods for the price of $1,000 or more is not enforceable unless there exists a writing sufficient to indicate that a contract has been made between the parties and signed by the party against whom enforcement is sought. Mich. Comp. Laws § 440.2201(1).

have been intended also as a complete and exclusive statement of the terms of the agreement.").

Avco's argument attempts to gloss over a very basic fact   namely, that the purchase orders do not contain integration clauses.  Thus, as the district court correctly recognized, there was a factual question as to whether the parties intended the purchase orders to be the "final expression of their agreement."  *See* Mich. Comp. Laws § 440.2202.  Contrary to Avco's implied premise, "the existence of the purchase orders alone cannot trigger the parol evidence rule." *Johnson Controls v. Jay Indus., Inc.*, 459 F.3d 717, 728 (6th Cir. 2006).  Rather, its application depends on the parties' intent.  *See id.* ("The Supreme Court of Michigan has stated, '[w]hen the parties did not regard their purchase order as the final expression of their agreement, parol evidence is admissible to establish what that agreement was.'" (quoting *Baker v. DEC Int'l*, 580 N.W.2d 894, 899 n. 18 (Mich. 1998))).  In other words, the district court correctly recognized that:

> the prerequisite to the application of the parol evidence rule[] [is that] there must be a finding that the parties intended the written instrument to be a complete expression of their agreement as to the matters covered.  Extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on this threshold question of whether the written instrument is such an 'integrated' agreement.

*NAG Enters., Inc. v. All State Indus., Inc.*, 285 N.W.2d 770, 771 (Mich. 1979) (per curiam) (footnotes omitted).  *See also* Mich. Comp. Laws Ann. § 440.2202 cmt. 1 (stating that "This section definitely rejects: (a) Any assumption that because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon[.]"); *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 414 (Mich. Ct. App. 1998) (holding that "parol evidence of prior or contemporaneous agreements or negotiations is admissible on the threshold

7

question whether a written contract is an integrated instrument that is a complete expression of the parties' agreement"). *Cf. UAW-GM*, 579 N.W.2d at 414-16 (holding that parol evidence of a separate agreement providing that the hotel would have union employees at the time of the convention was not admissible, because the parties' letter agreement included an express merger clause). Because the purchase orders do not contain integration clauses, the district properly allowed the jury to decide whether the purchase orders constituted the parties' final and complete agreement. *See Vergote v. K Mart Corp.*, 336 N.W.2d 229, 231 (Mich. Ct. App. 1983) (per curiam). *See also Johnson Controls,* 459 F.3d at 728-29 (holding that the district court properly allowed the plaintiff seller to present parol evidence on the question of whether purchase orders were the final expression of an agreement); *Baker v. DEC Int'l*, 580 N.W.2d 894, 899 n.18 (Mich. 1998) ("When the parties did not regard their purchase order as the final expression of their agreement, parol evidence is admissible to establish what that agreement was.") (internal quotation marks and citation omitted). And if, as Winkler believed, the summary spreadsheet were part of the parties' agreement, United had no reason to object under Mich. Comp. Laws § 440.2201(2).[6]

---

[6]Avco also argues that the dedicated inventory buy-out term was such that, if agreed upon it, "would certainly have been included" in the purchase orders. *See* Mich. Comp. Laws § 440.2202 cmt. 3. Again, this argument presupposes that the purchase orders were intended by the parties to be the final, complete, and integrated agreement between the parties.

Avco cites *Steel Strip Wheels, Ltd. v. General Rigging, LLC.*, No. 08-cv-13737, 2009 WL 3190415 (E.D. Mich. 2009), also a UCC sales contract case. There the defendant contracted to sell seven industrial presses to the plaintiff. The parties negotiated the terms of a sales invoice that covered the sale, but did not include the plaintiff's time of performance. The district court held that parol evidence concerning the plaintiff's time of performance was not admissible to vary the terms of the parties' invoice, despite the lack of an integration clause, because the invoice covered all other terms of the parties' performance, namely price, quantity, schedule of payments and ultimate time of performance, and was therefore the final expression of the parties' contract. *See Steel Strip Wheels*, at *7. This case is distinguishable from the present situation. There the parties actually negotiated all of the terms which were set forth in the invoice at issue. Here the purchase orders

In short, the district court did not err in submitting the question of the dedicated inventory buy-out term to the jury, and therefore did not err in denying Avco's motions under Rule 50(a) and Rule 59.

**B.**

Avco also claims that the district court erred when it granted United's motion for summary judgment on its breach of contract counterclaim, and then abused its discretion by denying Avco's motion for leave to amend its countercomplaint. Avco maintains that evidence adduced in discovery established that in 2006, the parties agreed to extend the lives of their purchase orders until the end of 2006 to give Avco adequate time to negotiate new purchase orders with new suppliers, and that United breached this agreement, leaving Avco with insufficient time to negotiate replacement supply contracts with competitive terms.

The grant of a motion for summary judgment is reviewed de novo. *CSX Transp. Inc. v. United Transp. Union*, 395 F.3d 365, 368 (6th Cir. 2005) (citation omitted). The denial of a motion to amend a pleading is reviewed for abuse of discretion, *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 833 (6th Cir. 1999), which means that we are left with a "definite and firm conviction that the

---

were blanket and ongoing, based on the parties' longstanding relationship and subject to revision, and they referred to and incorporated other documents, including data to be supplied by Avco in writing. At a minimum , they created a fact question as to whether the parties intended the purchase orders to be the final and integrated expression of their agreement. *Cf. Mason v. Lee-Bert, Inc.*, 39 N.W.2d 319, 322-23 (Mich. 1949) (holding that because purchase orders issued by the defendant to the plaintiff merely carried out a prior oral agreement between the parties and were not intended by the parties to evidence the entire contract, parol evidence was therefore admissible to establish the parties' agreement).

9

trial court committed a clear error of judgment." *Shane v. Bunzl Distribution. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008) (citation and quotation omitted).

As Avco readily acknowledges, its proof of damages is based entirely on its claim that the parties had an oral agreement to extend the purchase orders past their original expiration date until the end of 2006, to permit Avco to negotiate new contracts with new suppliers. It faults the district court for ignoring this evidence simply because it failed to mention the parties' extension agreement in the countercomplaint. It asserts that the court should have treated the argument made in its response brief, where the extension agreement is first mentioned, as an implicit request to amend its countercomplaint.

As the district court held, the countercomplaint does not allege a breach of an extension agreement. Given Avco's admission, it is clear that the district court correctly granted summary judgment on the basis that Avco failed to present any evidence that it suffered any damages proximately caused by United's failure to deliver parts "on time and without quality issues." So the issue really comes down to whether the district court erred in refusing to allow United to amend its countercomplaint and entertain evidence supporting the new claim.

According to Avco, this court "clearly requires" a district court to treat a party's new legal theory in opposition to a summary judgment motion as a motion for leave to amend its pleadings. "This court in the past has treated legal theories first raised in the plaintiff's response to a motion for summary judgment as an implicit motion to amend the complaint when all of the relevant facts had previously been pled." *Super Sulky, Inc. v. United States Trotting Ass'n*, 174 F.3d 733, 740 (6th Cir.

10

1999) (citing *Tefft v. Seward*, 689 F.2d 637, 639-40 (6th Cir. 1982)). Avco relies on *Tefft*.[7]

However, in *Tefft*, as the quote from *Super Sulky* highlights, "all of the relevant facts had previously been pled." *See Tefft*, 689 F.2d at 639-40 (holding that the district court abused its discretion in not considering the plaintiff's § 1983 claim where the complaint simply alleged assault and battery since the § 1983 claim for excessive force also shared the same facts and similar legal analysis). *But see Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (holding that the plaintiff was not allowed to assert new theories in a response to summary judgment or on appeal). Here, as the district court correctly noted, "the facts supporting Avco's counterclaim, the existence of a 'Purchase Order Extension Agreement' are not plead [sic] in its counterclaim."

Avco contends that United would not have suffered any substantial prejudice because its new theory had been "thoroughly explored" during discovery.[8] There are two basic problems with this

---

[7]Avco also relies on *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 307 (6th Cir. 2008). Avco asserts that *Niemi* stands for the proposition that "where first amended complaint did not state claim for *quantum meruit* relief, argument in opposition to summary judgment based on *quantum meruit* 'correctly treated as an implicit motion to amend the complaint.'" In *Niemi*, the district court granted summary judgment on the plaintiff's misappropriation of trade secret claim and promissory estoppel claim. *Id.* at 298. This court vacated and remanded, finding genuine issues of material fact on both issues. *Id.* at 309. This court also noted that although the first amended complaint did not include a claim for *quantum meruit* relief, the plaintiff argued that the record evidence substantiated his entitlement to *quantum meruit* relief based on a quasi-contract theory. *Id.* at 307. Because no such claim had been pleaded, we concluded that the district court correctly treated the plaintiff's argument as an implicit motion to amend the complaint, and did not abuse its discretion in denying it given the lower court's decision to grant summary judgment. *Id.* However, given this court's decision to remand for further proceedings, "the discretionary equation change[d] dramatically," since remand would almost certainly require re-opening of discovery on damages, which might legitimize the plaintiff's request to assert a claim for *quantum meruit* relief, the elements of promissory estoppel are analogous, and the trade secret claim also implicated equitable principles. *Id.*

[8]Avco further contends that it "expressly pleaded that it was seeking damages related to the need to resource parts with other vendors" citing paragraph thirteen of the counterclaim. As the district court observed, that contention was made in the context of United's alleged breach of the purchase orders, not its alleged breach of the extension agreement.

argument. First, this court has held that "'allowing amendment after the close of discovery creates significant prejudice.'" *Shane*, 275 F. App'x at 537 (quoting *Duggins*, 195 F.3d at 834). As the district court observed, Avco's counterclaim was filed on November 2, 2006, more than three and one-half years before it attempted to assert its new theory of liability. Avco's response motion was filed on January 27, 2010, and its express motion to amend its counterclaim on May 5, 2010, long after the deadline for filing amendments to pleadings (August 15, 2008), after the discovery deadline (December 29, 2009), after the dispositive motion cut-off (January 6, 2010), and after United had already moved for summary judgment on Avco's counterclaim. Avco's formal motion was not filed until after the district court had already granted summary judgment on the counterclaim. Allowing Avco to amend its counterclaim would have required the district court to reopen each of these deadlines, in a case that was already four years old. It is not difficult to see the undue prejudice. *See Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (noting that factors to be considered in determining whether to grant a motion to amend include "undue delay in filing," and "undue prejudice to the opposing party") (citations and quotation omitted). *Cf. Janikowksi v. Bendix Corp.*, 823 F.2d 945, 951-52 (6th Cir. 1987) (holding that denial of a motion to amend the complaint was an abuse of discretion because the motion was filed before discovery had been completed). Furthermore, Avco offered no explanation for the long delay. *See Wade*, 259 F.3d at 459 ("When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier."); *Duggins*, 195 F.3d at 834 (same).

Second, if United was clearly on notice of Avco's new theory of liability because of significant discovery on that issue, so was Avco. But Avco did not move to amend until the eleventh and one-half hour. A court could chalk this up to carelessness, "which is not compatible with a

12

finding of diligence and offers no reason for a grant of relief, . . . or as unwarranted delay." *Shane*, 275 F. App'x at 537 (internal quotation marks and citation omitted). Thus, by finding that "any amendment to the Counterclaim at this late date, [three months before trial] . . . is untimely, is prejudicial to [the] opposing party and would unduly delay the proceedings," the district court clearly did not abuse its discretion.[9]

## III. Cross-Appeal

In its cross-appeal, United argues that the district court erred in granting summary judgment to Avco on United's claim for breach of the studs purchase order agreement because it presented evidence that Avco never gave United the opportunity to negotiate new pricing for the studs part.[10] We find no error. First, as the district court held, United alleged that Avco terminated the agreement "without cause," a term not found in the purchase order, and did not allege that Avco denied it "the first right to negotiate new pricing," consistent with the language of the purchase order. Second, as the district court observed, the purchase order clearly and unambiguously required "that any new prices must be agreed to prior to November 1, 2003," and United did not offer any evidence that Avco attempted to negotiate with any supplier before November 1, 2003. Instead, as United

---

[9]We note with some irony that Avco argues that parol evidence of the alleged extension agreement should have been allowed because the purchase orders did not contain integrations clauses forbidding modification.

[10]The pertinent language of the purchase order is as follows:

The first two years of the agreement are firm, with pricing as specified above.
The third and fourth years are optional, with [United] having the first right to negotiate new pricing with [Avco] for the coming year(s). For the final two years, new pricing will be negotiated (if possible) and agreed to no later than November 1st, 2003. If an agreement can not be negotiated, [Avco] will be free to explore other supply options.

13

acknowledges, Avco did not seek another supplier until November, 2004 during the third year when no orders were guaranteed and after the deadline for renegotiated pricing. In short, as the district court held, the language of the purchase order does not require advance notice of termination or the opportunity to beat new pricing after November 1, 2003. The grant of summary judgment was proper.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.