RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0106p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WILLIE J. JACKSON,

      *Plaintiff-Appellant,*

    *v.*

No. 06-5844

FEDEX CORPORATE SERVICES, INC. and FEDERAL
EXPRESS CORPORATION, INC.,

      *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 04-02470—Samuel H. Mays, Jr., District Judge.

Argued: July 19, 2007

Decided and Filed: March 6, 2008

Before: MARTIN and ROGERS, Circuit Judges; HOOD, District Judge.[*]

---

## COUNSEL

**ARGUED:** James Edward King, Jr., ESKINS KING & SEVIER, Memphis, Tennessee, for Appellant. Karen Vaughan McManus, FEDEX CORPORATION, Memphis, Tennessee, for Appellees. **ON BRIEF:** James Edward King, Jr., Bradley W. Eskins, ESKINS KING & SEVIER, Memphis, Tennessee, for Appellant. Karen Vaughan McManus, FEDEX CORPORATION, Memphis, Tennessee, for Appellees.

      HOOD, D. J., delivered the opinion of the court, in which MARTIN, J., joined. ROGERS, J. (p. 9), delivered a separate dissenting opinion.

---

## OPINION

---

      DENISE PAGE HOOD, District Judge. Appellant Willie J. Jackson ("Jackson") filed a complaint against FedEx Corporate Services, Inc. and Federal Express Corporation (collectively "FedEx") alleging he was discriminated against based on his race in violation of The Civil Rights Act of 1991, 42 U.S.C. § 1981 as amended ("Section 1981"), Title VII of the Civil Rights Act,

---

[*] The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

42 U.S.C. § 2000e *et. seq.* ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 *et. seq.* The district court dismissed Jackson's ADEA claim and Jackson does not appeal that decision. The district court denied FedEx's Motion for Summary Judgment with respect to Jackson's claims under Section 1981 and Title VII. Following the close of Jackson's evidence, the district court granted FedEx's motion, pursuant to Fed. R. Civ. P. 50, to dismiss Jackson's case. For the reasons set forth below, the district court's order is reversed and the matter remanded for further proceedings consistent with this Opinion.

## I. BACKGROUND

Jackson, an African-American, began his employment with FedEx in 1979 as a financial analyst. Prior to his employment at FedEx, Jackson attended Florida A&M University and received a Masters of Business Administration in Finance from the University of North Carolina at Chapel Hill. Jackson also worked as a computer programmer for IBM Corporation prior to becoming an active duty officer in the Army. Jackson served in the Military Intelligence Branch of the Army Security Agency and obtained the rank of Captain. While working for FedEx, Jackson took computer programming courses, including FORTRAN, C, and COBOL, at a community college in Memphis, Tennessee. Jackson also participated in training courses at FedEx in the following areas: Basic Java Programming; TCP/IP; Basic Administration; HP-UX Systems Administration; PVCS Version Manager System; C Programming; and Basic C++ Programming.

Jackson held the title of Technical Advisor in the Information Technology ("IT") Department for fifteen years and in approximately 1995 he began working under the supervision of Miley Ainsworth in the IT Department. As a Technical Advisor, Jackson primarily functioned as a system administrator, installing, upgrading and testing computer programs purchased by FedEx to operate on its computer operating systems and servers.

In 1999, Jackson was transferred to a software application development group under the direction of Charles Sherwood. In 2000, in part resulting from a centralization of departments within FedEx, Jackson accepted FedEx Services' offer of employment and as of June 1, 2000, his job title changed to Senior Technical Analyst. In the summer of 2000, Sherwood's group was assigned the PowerPad project, which involved the design and development of software for a new handheld device for use by FedEx couriers. The six other employees that comprised Sherwood's workgroup, all of whom are Caucasian, were: Virginia White, Mary Brown, Glen Parham, Cathy Story and Steve Morrison. All of the individuals in Sherwood's workgroup held the title of Senior Technical Analyst. White, Brown and Parham did not have a Bachelor's degree and none of the employees other than Jackson held a master's degree. Brown functioned as a business analyst and the other five employees in Jackson's workgroup were programmers.

Barbara Gail Bermel, Human Resources manager of FedEx Services, testified that beginning in August of 2000, FedEx Services conducted a workforce adjustment of its IT Department under the FedEx Services IT Resource Management Plan. As part of the adjustment, Sherwood was asked to complete Employee Contribution Assessment ("ECA") packets to assess employees under his supervision. The ECA is a tool to evaluate the performance and contribution of each employee toward the short- and long- term goals of the workgroup.[1] The four general categories in the ECA are: (1) contribution to short-term tasks and objectives; (2) contribution to long-term goals and strategies; (3) contribution to leadership, cooperation and teamwork; and (4) performance review.

---

[1] The parties disagree with regard to whether the ECA is designed to evaluate employee contribution in relation to the goals of the particular group in which the employee works or whether it is in relation to the company as a whole. The district court judge determined that the proofs presented at trial focused on the workgroup who reported to Sherwood, and that is therefore the universe within which the district court analyzed "similarly situated."

Jackson received a one, which is the lowest possible score, in each of the first three categories of the ECA, and all the other employees in Sherwood's workgroup received a four, the highest possible score, in each of the first three categories.[2] At trial, Sherwood testified that he gave Jackson a one in each category because his skills as a Systems Administrator were no longer needed for the PowerPad project, which Sherwood described as the short- and long- term goals of the workgroup.

In September of 2000, FedEx employees with the lowest ECA scores were selected for termination, effective November 30, 2000, if the employee did not secure another position within FedEx or accept the offer of severance pay and outplacement assistance. Jackson did not accept the severance offer, nor did he apply for any open positions at FedEx. Jackson's employment with FedEx terminated on November 30, 2000.

Following the close of Jackson's case-in-chief, FedEx brought a motion to dismiss Jackson's case pursuant to Fed. R. Civ. P. 50, which the district court granted, finding that there were no similarly situated individuals with whom Jackson could be compared for purposes of establishing a *prima facie* case of race discrimination. Ruling from the bench, the district court judge stated,

> to be similarly situated . . . with whom the Plaintiff seeks to compare treatment must have the same supervisor, be subject to the same standards, having engaged in similar conduct without differentials or mitigation . . . It means these individuals have to have similar background, education, experience, job responsibilities, and performance. It means that the job responsibilities must require the same skills and abilities. And the job responsibilities are equal and interchangeable. That's my understanding of the state of the law in this Circuit. That's a high standard as to these individuals.
>
> And I want to focus because the mandate is that there be general similarities. I want to focus on experience and job experience. . . There are differences in education of these individuals. Some were trained more specifically for computer work. Some weren't. But, let's look past their individual situations, and focus on the experience and job responsibilities.

(J.A. 926-27).

The district court concluded that Story, White, Griffin and Morrison were not similarly situated to Jackson, as they all functioned as programmers and their job responsibilities did not require the same skills or abilities as Jackson's. The district judge found that Brown was the only employee in Jackson's workgroup with whom he could *possibly* be similarly situated. Brown functioned as a business analyst and her principal duty was acting as a liaison between the business side of the operations and the employees who developed programming codes. Brown never

---

[2]The fourth category of the ECA entitled Performance Review evaluates an employee's prior on-the-job performance. On this section, each employee in Jackson's workgroup received between a 3.1 and 3.8, with Jackson receiving a 3.5. The ECA Instructions state,

> It is important to note that an employee can score high or low on the performance review factor and at the same time score high or low on each of the additional contribution factors. For example, an employee with a high performance review may be performing tasks well, but the tasks may not be significantly contributing to the objectives of the company. Conversely, an employee with a lower review score may be performing a task at a minimal level, but completing the task is critical to obtaining the short-term objectives or long-term goals of the company.

(Joint Appx. at 763).

graduated from college, but took some college courses.  The district judge stated that Brown had substantial familiarity with business at FedEx, as she had worked in accounting, sales revenue, shipping and "architectural".  (J.A. 931).  Jackson had no experience as a business analyst and had not been a programer for a number of years.  The district court then found that "a reasonable jury would not or could not find that there was a legally, sufficient, evidentiary basis to conclude that Ms. Brown and Mr. Jackson were similarly situated for purposes of this case."  (J.A. 931).  Judgment in favor of FedEx was entered as a matter of law.

## II.  ANALYSIS

### A.     Standard of Review

The court reviews *de novo* the district court's grant of judgment as a matter of law under Fed. R. Civ. P. 50(a).  *Scotts Co. v. Central Garden & Pet Co.,* 403 F.3d 781, 788 (6th Cir. 2005) (citing *Monette v. AM-7-7 Baking Co.*, 929 F.2d 276, 280 (6th Cir. 1991)).  In entertaining a motion for judgment as a matter of law, the court is to review all evidence and draw all reasonable inferences in the light most favorable to the non-moving party, without making credibility determinations or weighing the evidence.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000).

Judgment as a matter of law pursuant to Rule 50(a) is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  Fed. R. Civ. P. 50(a)(1).  "In other words, the decision to grant judgment as a matter of law or to take the case away from the jury is appropriate 'whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ.'"  *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999) (quoting *Sawchik v. E.I. DuPont Denemours & Co.*, 783 F.2d 635, 636 (6th Cir. 1986)).

### B.     "Similarly Situated" Standard

Jackson asserts that in ruling on FedEx's Rule 50 Motion, the district court applied an overly narrow construction of the similarly situated standard.  Jackson argues that the district court applied an incorrect legal standard, and committed gross error, in stating that "similarly situated" is a "high standard" to meet.  Specifically, Jackson contends that the district court improperly used FedEx's rationale for the termination - the alleged experience of the computer programmers in Jackson's workgroup - as the criteria for defining similarly situated.  Jackson asserts that the district court's application of the similarly situated standard frustrated Jackson's opportunity to present evidence that FedEx's rationale for his termination was mere pretext.  The standard applied by the district court, Jackson contends, also runs afoul of the intent of Title VII, which is to ensure equality in the workplace.   Jackson stresses the fact that the burden of establishing a *prima facie* case of discrimination "is not onerous."  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

FedEx responds that the district court applied a correct statement of law in ruling on its Rule 50 Motion.  FedEx argues that the district court stated the standard for similarly situated from *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992) and *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998),  prior to explaining the relevant factors applicable to the instant case.  FedEx also argues that in Sixth Circuit cases involving alleged discrimination related to an employer's assessment of an individual's qualifications to perform a job or contribute to the employer's needs, the focus is on the employee's relevant qualifications, including education, experience, work history, and job responsibilities.  *Leadbetter v. Gilley*, 385 F.3d 683 (6th Cir. 2005); *Campbell v. Hamilton County*, 2001 U.S. App. LEXIS 22884 (6th Cir. October 17, 2001)(unpublished).  FedEx argues that the district court made its own determination of the factors

relevant to the case, as opposed to Jackson's contention that the district court applied an overly narrow analysis of similarly situated. Namely, FedEx asserts that because the ECA is the instrument that led to Jackson's termination, it was correct for the district court to look primarily to contribution, experience and job skills in defining similarly situated since those were the criteria in the ECA. FedEx notes that although Jackson received comparable scores to the other individuals in his group in the area of performance, because performance accounted for only one fourth of the ECA, the district court properly focused on contribution to the short- and long- term goals of the workgroup.

Jackson likewise argues that the factors analyzed in *Mitchell* are not inflexible and the proper inquiry is whether plaintiff is similarly situated in all relevant aspects. *See McMillan*, 450 F.3d 405, 414 (6th Cir. 2005) ("The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated'"). Jackson contends that the most relevant element of Jackson's termination is the ECA itself. However, he further argues that the district court failed to utilize the ECA when analyzing whether Jackson established a *prima facie* case. Jackson asserts that the relevant aspects the district court should have considered are all of the categories in the ECA, and not just those relating to experience. Jackson also contends that the cases cited by FedEx are factually distinguishable.[3] *See Hill v. Forum Health*, 167 Fed.Appx. 448 (6th Cir. 2006) (involving a failure to promote claim); *Leadbetter v. Gilley*, 385 F.3d 683 (6th Cir. 2004) (involving a reverse discrimination claim); *Campbell v. Hamilton County*, 23 Fed.Appx. 318 (6th Cir. 2006) (involving a claim of disparate treatment in the disciplinary context).

The *Mitchell* case involves claims of race and age discrimination in the context of employment termination. Mitchell, a 51 year old African-American woman, was employed as an accounts examiner for the Toledo Hospital. In an attempt to play a practical joke, Mitchell hid certain forms from her supervisor. Once the forms were found, Mitchell was informed that her actions constituted misuse of hospital property, a terminable offense, and she was discharged. The basis of Mitchell's claim of discrimination was that two non-minority employees engaged in similar conduct, but were afforded more lenient treatment because they are Caucasian. In *Mitchell*, we stated that,

> to be "similarly situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

964 F.2d at 583. We concluded that plaintiff failed to establish that the two white employees she identified as comparables were "similarly situated in all respects". 964 F.2d at 583 (quoting *Stotts v. Memphis Fire Dep't*, 858 F.2d 289 (6th Cir. 1988)). Moreover, we found that plaintiff failed to produce sufficient evidence of the seriousness of the comparable's offenses. *See Lanear v. Safeway Grocery*, 843 F.2d 298 (8th Cir. 1988) (holding that a plaintiff must demonstrate that he and the comparable are similarly situated in all respects and that the other employee's acts were of comparable seriousness to his actions).

In *Ercegovich*, the plaintiff alleged he was discriminated against based on his age, in violation of the ADEA and Ohio's age-discrimination laws, and was refused an offer to transfer to another position. 154 F.3d at 348. Ercegovich was an employee of Defendant Goodyear Tire &

---

[3]Jackson asserts that FedEx asserts for the first time on appeal that Jackson was terminated due to a reduction in force. To the contrary, Jackson argues, at the time Jackson was terminated, FedEx was hiring employees and FedEx argued that Jackson was not entitled to front pay due to job openings.

Rubber Co. ("Goodyear") for twenty-two years prior to the elimination of his position, as a result of a reduction in force ("RIF"), and the termination of his employment. Ercegovich claimed that in comparison to other employees in the Human Resources Development Department, he was not offered an opportunity to transfer within the company. The district court found that because Ercegovich had a different job function than the two younger employees to whom he sought to be compared, he could not establish a *prima facie* case. In overturning the grant of summary judgment in Goodyear's favor, we found that the district court failed to address the relevancy of the *Mitchell* factors in relation to Ercegovich's claim. We reasoned that "when an employer makes selective offers of transfer following a reduction in force or a reorganization, differences in the job activities previously performed by transferred and non-transferred employees do not automatically constitute a meaningful distinction." 154 F.3d at 353. Because the positions previously held by Ercegovich and those he sought as comparables were all related human resources positions, we concluded Ercegovich was similarly situated.

Addressing the standard of "similarly situated," we found that the district court applied an "exceedingly narrow" interpretation of *Mitchell* and held that,

> Courts should not assume, however, that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be *relevant* in 'all of the relevant aspects.'

*Id.* at 352 (citing *Pierce v. Commonwealth Life Insurance Co.*, 40 F.3d 796, 802 (6th Cir. 1994) ("The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances."). We determined that the appropriate test is to look at those factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects. *Id.* We further disapproved of a rigid standard of similarly situated that only took account of job functions, noting,

> A *prima facie* standard that requires the plaintiff to demonstrate that he or she was similarly-situated in every aspect to an employee outside the protected class receiving more favorable treatment removes from the protective reach of the anti-discrimination laws employees occupying 'unique' positions, save in those rare cases where the plaintiff produces direct evidence of discrimination. . . . a plaintiff whose job responsibilities are unique to his or her position will *never* successfully establish a *prima facie* case . . .

*Id.* at 353 (emphasis in original).

Jackson argues that if the narrow approach to the similarly situated standard applied by the district court is upheld, FedEx would be free to discriminate against Jackson and other employees because they have different job functions than other employees. Bart Dahmer, the current Director of IT at FedEx testified that an employee could not receive a one in a category of the ECA based solely on the task assigned. Based on this testimony, Jackson argues that it was improper for Sherwood to rate Jackson a one in every category solely because of his position as a systems administrator.

Jackson argues that the district court's finding that Jackson was not similarly situated to the others in his workgroup was based mainly on his position as a system administrator, and the district court erred in ignoring other aspects of the ECA, such as leadership, understanding of business

knowledge, initiative to engage in learning activities and technical knowledge. Jackson argues that an application of *Ercegovich* to the instant facts lends itself to the following principle:

> When an employer prepares a document [ECA] that is to be applied to all employees in the organization, following a Resource Management IT Plan, differences in the job activities previously performed by employees do not automatically constitute a meaningful distinction that explains the employer's differential treatment of the two employees regarding the ECA.

(Br. of Appellant at 49).

FedEx argues that, although Jackson's education, professional experience and training demonstrate he had proficiency with computers, Jackson did not present evidence that he had the ability to analyze functional specifications or write computer code in an object-oriented language, which was critical to the PowerPad project. FedEx, pointing to the evidence presented at trial, asserts that Jackson testified that, similar to his coworkers, he had programming experience, however, he had not held a programming job for at least 30 years and only programmed in the late 1960's for three years in Assembly, a procedural programming language. All of the other employees in Jackson's workgroup had anywhere from 11 to 28 years of programming experience. Similarly, although Jackson attended a course in C++, an object-oriented language, in 1994 and his peers did not have formal training in C++, the other employees in Jackson's workgroup programmed or analyzed JAVA, an object-oriented language, during the two years prior.

FedEx also argues that because Jackson specializes in systems administration work, while the other individuals in his workgroup specialize in programming, the district court properly ruled that Jackson is not similarly situated to the employees in his workgroup. FedEx points to *McGrath v. Lockheed Martin Corp.*, an unpublished opinion of the Sixth Circuit Court of Appeals. 2002 U.S. App. LEXIS 21278 (6th Cir. October 9, 2002). As part of a RIF, management was required to assess employees skills vis-a-vis organizational objectives. Similar to the ECA in the instant case, management assessed employees based on various factors, including: possession of critical skills; performance reviews; education/training; transferability of job skills; length of service with the company; and time in the position. *McGrath*, 2002 U.S. App. LEXIS, at \*10. McGrath was identified as one of two candidates for layoff in his department "based solely on the lack of work in the area of finite element analysis ("FEA") which was the area of technical expertise that I associated with McGrath." *Id.* In affirming the district court's dismissal of McGrath's ADEA claim, the panel concluded that McGrath was not discharged for an impermissible reason because, although he had training and experience in the appropriate type of engineering work, he limited his work in the three years prior and thus his skills were not as transferable as those of his peers. *McGrath*, 2002 U.S. App. LEXIS, at \*26. However, the panel's discussion of plaintiff's qualifications in relation to those of his peers is in the court's analysis of pretext. ("Plaintiff proffers other evidence in an attempt to demonstrate a conflict in the reasons given for his layoff. . . . The fact that FEA analysis work became available in August 1996, and that another engineer was asked to perform 700 hours of FEA work within a month after plaintiff was discharged, does not undercut that plaintiff was chosen for discharge because he limited his engineering work in the last three years of his career solely to FEA."). In the instant case, the district court had not reached the issue of pretext and therefore *McGrath* is inapplicable.

The evidence at trial shows that Jackson's elimination was not the result of a RIF, but instead the result of a workforce adjustment of FedEx's IT Department under the FedEx Services IT Resource Management Plan. Although *Ercegovich* and *McGrath* involve RIF's, the reasoning is nonetheless persuasive given that FedEx was also conducting a reorganization of departments. The district court's formulation of the similarly situated standard is exceedingly narrow. In discussing

the similarly situated standard, the district court recited the factors from *Mitchell*[4] and then the mandate, from *Ercegovich*, to apply only those factors relevant to the factual context. *See also McMillan*, 450 F.3d at 413-14. However, rather than making a true independent determination of the relevant factors, the district court relied on the ECA and FedEx's argument that the short- and long- term goal of the workgroup is the PowerPad project in deciding the focus of the inquiry. FedEx's argument that Jackson is not similarly situated, because his job function is not necessary for the PowerPad project, is in fact the reason offered by FedEx in arguing that Jackson's termination was not a pretext for discrimination. The *prima facie* case inquiry into the relevant skills and qualifications for each position by the district court was misplaced. The analysis is more appropriate to determining whether FedEx's legitimate non-discriminatory reasons for terminating Jackson was pretext for discrimination.

The *prima facie* showing requirement is not onerous, as mandated by the Supreme Court in *Burdine*. 450 U.S. at 253. "The phrase 'prima facie case' not only may denote the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue . . . . [I]n the Title VII context we use 'prima facie case' in the former sense." *Id.* at 254 n. 7. Here, the district court impermissibly placed a burden of producing a significant amount of evidence in order to establish a *prima facie case.* That burden is not appropriate at the *prima facie* state, but rather is better suited for the pretext stage that occurs later. The purpose of Title VII and Section 1981 are not served by an overly narrow application of the similarly situated standard. The district court's formulation of factors in order to analyze Jackson's *prima facie* evidence is too narrow and restrictive. It was not proper for the district court judge to define the relevant factors based solely upon narrow job functions and FedEx's stated requirements for the PowerPad project. In effect, the district court is requiring an exact correlation between the position of the employee prior to the ECA and the requirements of the PowerPad project. The number of employees with whom Jackson could be compared for purposes of establishing a comparable is relatively small. Jackson held a unique position within the workgroup, as he was the only system administrator. The district court's narrow definition of similarly situated effectively removed Jackson from the protective reach of the anti-discrimination laws. *See Ercegovich*, 154 F.3d at 353. The district court's finding that Jackson had no comparables from the six other employees in the PowerPad project deprived Jackson of any remedy to which he may be entitled under the law.

### III. CONCLUSION

The district court's order of dismissal pursuant to Rule 50(a) is reversed and the matter remanded for further proceedings consistent with this opinion.

---

[4] Although the *Mitchell* factors have been found to apply primarily to the disciplinary context, it was not error for the district court judge to cite these factors as "relevant considerations". *Ercegovich*, 154 F.3d at 350-52.

———————————

**DISSENT**

———————————

ROGERS, Circuit Judge, dissenting. While I agree with the majority's conceptual analysis and its conclusion that the appellant established a prima facie case at trial, I would affirm the district court on the alternative ground that FedEx demonstrated a legitimate, non-discriminatory reason for Jackson's termination, and that Jackson failed to show that reason to be a mere pretext for discrimination.

Even though FedEx received a directed verdict at the close of Jackson's case, it is apparent that each party had a full opportunity to present its evidence on the questions of whether there were legitimate, non-discriminatory reasons for Jackson's termination, and if so, whether those reasons were merely a pretext for discrimination. Indeed, in its brief to this court, FedEx argued that it should prevail even if Jackson were found to have established a prima facie case because it had proven at trial that it had a legitimate, non-discriminatory reason for terminating Jackson. Likewise, Jackson argued in his initial brief, and in his reply brief, that the evidence he presented at trial had proven the appellee's legitimate, non-discriminatory reason to be a pretext for discrimination. In light of the facts that both parties briefed those issues to this court, and that both parties obviously believe that they presented sufficient evidence at trial for the case to be decided on those issues, it would not be improper for this court to base its decision on those grounds. *See Carver v. Dennis*, 104 F.3d 847, 849 (6th Cir. 1997).

The legitimate, non-discriminatory reason behind Jackson's termination is that he did not have the necessary experience or skills to be of use to his workgroup, which was engaged in designing and developing software for FedEx's PowerPad project. That particular assignment was both the short-term and the long-term project for the workgroup. It required experienced programmers and business analysts who could design and develop software in C++, an object-oriented programming language similar to JAVA. Compared to the other people in the workgroup, Jackson did not have nearly the experience to be of assistance in the PowerPad project. Cathy Story, for example, had eleven years of experience in computer programming, with significant experience in JAVA programming; Virginia White had been a computer programmer for the previous 22 years; Glen Parham had received training in C++ programming and had been a programmer for the previous 28 years; Michael Griffith had a bachelor's degree in electrical engineering and had been a programmer for 27 years; James Morrison had a bachelor's degree in computer science and had been a programmer for 21 years; and Mary Brown had been developing software as either a programmer or business analyst for the previous 30 years. Perhaps most importantly, each of these individuals had programmed or analyzed JAVA during the two years prior to Jackson's termination. In short, these individuals had the skills and experience that the workgroup needed. Mr. Jackson, on the other hand, did not. In contrast to the other individuals in the workgroup, Jackson had not held a day-to-day programming job since the early-1970's, and his only experiences with object-oriented programming were a four-day C++ class in 1994 and a three-day JAVA class in 1996. In fact, he admitted in his trial testimony that he never programmed in C++ or JAVA after taking those respective classes.

Given Jackson's lack of the requisite skills and experience, his termination was a legitimate, non-discriminatory decision on the part of FedEx. Because Jackson has presented no evidence that would allow an inference of discriminatory intent to be drawn from that decision, a jury could not reasonably find that FedEx's legitimate, non-discriminatory reason for terminating Jackson was a pretext for discrimination. Accordingly, I would affirm on those grounds.