GRIFFIN, Circuit Judge.
Plaintiff Graham Lynch appeals the district court’s grant of summary judgment in favor of defendants ITT Educational Services (“ITT”) and Tony Darosa in this case involving claims of age and race discrimination under state and federal law. The district court determined that Lynch failed to establish a prima facie case of employment discrimination because there is no evidence that ITT treated a similarly situated employee outside the protected class more favorably. Further, the district court determined that Lynch failed to show that the articulated reason for his *441 termination was pretextual. For the following reasons, we affirm.
I.
ITT is a group of colleges that provides higher education to students in specific technical areas of vocation. The Accrediting Council for Independent Colleges and Schools (“ACICS”) sets minimum requirements that must be met for the college or school to obtain and maintain accreditation. For associate’s degree programs, ACICS requires instructors teaching courses other than general education to hold a bachelor’s degree and “be assigned based on their major and minor academic preparation and/or related experience.” Nonetheless, ACICS encourages colleges such as ITT to impose more stringent faculty qualification requirements, and institutions are expected to comply with standards even as they change over time. Allegedly as a measure to avoid jeopardizing its accreditation, ITT requires all instructors to hold a bachelor’s degree in a “related area” to their teaching subject and have earned at least fifteen semester hours in “the subject” of their teaching.
In June 2006, ITT hired Lynch as an adjunct instructor at its Warrensville Heights campus to teach courses in information technology (“IT”), including computer programming, network database design, and operating systems. Lynch is an African-American and was born in 1939. He holds a bachelor’s degree in Civil Engineering from Ohio University and an MBA from Pepperdine University. His education did not include any IT courses specifically, but he used advanced computing to complete his MBA coursework, such as operations research, forecasting models, statistical inferences and correlations, and regression analyses.
Lynch’s work experience relating to computing is extensive. While in the United States Air Force performing work as a civil engineer, Lynch “had a couple of courses in computer programming and how to interact with the base supply computer.” He also “received certificates on how to use the computer system to plan construction and maintenance and planning using program evaluation review techniques and critical path methods.” In addition, Lynch underwent computer training while working as a marketing representative for IBM. During his employment with IBM, Lynch “help[ed] customers get their computers up and running and programmed.” As a data processing manager at Albert A. Webb Associates, Lynch “was responsible for the computing systems and all the software and everything associated with computing.” While working for the Eastern Michigan Water District, he set up programming for sending out utility bills, water analysis, land planning, and payroll. While working for a manufacturer of precision instruments and gun sights for strategic weapons, Lynch managed and implemented the business, accounting, payroll, and financial management aspects of the company’s computer system at corporate headquarters. In addition to installing the software and building the computer system from the ground up, Lynch trained accountants and other staff on how to use and control the computing system. His other past employers include the County of Riverside and Science Application International Corporation; both positions required extensive computer knowledge. As far as teaching experience, Lynch has been an adjunct instructor in the areas of IT, computer science, and business at Riverside Community College, Chapman, and Brown Mackie College.
Nonetheless, Lynch admitted at his deposition that a bachelor’s degree in Civil Engineering is not related to IT: “[IT] has *442 to do with all the realm of computers, networks, [and] multi media” and “civil engineering has to do with construction, dams, roads, [and] highways.” He also admitted that he has not earned fifteen semester hours in the subject of IT. Thus, he acknowledged that he does not meet the requirements to teach IT at ITT. Yet, as Lynch explained, “I was still hired. Somebody found me fit.”
Allegedly, Lynch’s lack of credentials was not discovered until nearly two years after his hire during a routine audit in preparation for a visit and accreditation review by ACICS. At the time, Ann Conti-guglia was the school director of the War-rensville Heights campus, and Ronald McClendon was the dean. McClendon, who is African-American, recalls Conti-guglia approaching him with a complaint from a student that Lynch had made racial remarks in the classroom. McClendon spoke with Lynch and the student, and to McClendon’s satisfaction, the claim was baseless. Nonetheless, Contiguglia maintained that “[h]e’s got to go.” Asked whether he believed age or race played a factor in Lynch’s termination, McClendon stated: “I don’t know specifically that race or age was a factor in the way that [Conti-guglia] treated him, but I do believe that [she] had a certain set of behaviors and demeanor with black male faculty that would cause me to believe that she either took us very much for granted or that she didn’t value us very much.” Asked why he. thought Contiguglia undervalued black male faculty, McClendon said that she talked “condescendingly, aggressively, and at times with flirtation” to them. In McClendon’s opinion, Contiguglia treated black males differently.
Ronald Lewellen replaced McClendon as dean in October 2008. Contiguglia told Lewellen, as she had told McClendon, that Lynch had to go. Asked whether he had ever heard Contiguglia make negative comments regarding Lynch’s age or race, Lewellen testified, “[m]aybe some comments about his age, but I don’t recall ... anything that I could say that’s definitely racial.” Nevertheless, Lewellen believes that age and race played a factor in Lynch’s termination and that Contiguglia used Lynch’s alleged lack of qualifications as an excuse to fire him. He recalls rumors going around that Contiguglia “didn’t particularly care for [Lynch]” and had “some professional jealousy in regard to [his] positive relationships with students.” According to Lewellen, Contiguglia “was not respected or liked very much by professionals” because of her fiery temper. Lewellen thinks that Contiguglia’s decision to terminate Lynch was personal as opposed to professional.
But Contiguglia was not the final decision-maker. Contiguglia reported to Da-rosa, the district manager, who she claims would have made the decision to terminate Lynch. Further, Contiguglia was herself fired on November 12, 2008, several days before Lynch’s termination.
According to Darosa, he decided to terminate Lynch because he did not meet the job requirements imposed by ITT or ACICS. He discovered Lynch’s lack of qualifications after being approached by the dean and director of the Warrensville Heights campus during a visit. No other employees falling short of the requirements were brought to Darosa’s attention. Darosa reviewed Lynch’s resume, saw that he did not meet the job requirements, and concluded that a mistake must have been made in hiring him in the first place. During a meeting with Lynch, Darosa asked Lynch if there was anything missing on his resume that would qualify him to teach IT. Lynch thought that his experience should be enough, but he admitted that his academic transcripts did not qualify him to *443 teach IT. No comment was made about Lynch’s age or race during the meeting. Indeed, Lynch could not identify any comment made about his age or race during the entire course of his employment with ITT.
Following this meeting, Darosa talked with the national director, Gary Carlson, and the HR department. Carlson agreed with Darosa that Lynch was not qualified from the time he was first hired. According to Carlson, even though Lynch taught for two years and received great ratings, it was proper to terminate him because he did not meet the qualifications to be an IT instructor. The HR department inquired whether Lynch was qualified to teach any other courses. According to Darosa, at the time, there were no available positions that Lynch was qualified to teach. Although Lynch claims that he was qualified to teach business, he did not request to be transferred, and there is no evidence that such an opening existed. Ultimately, Da-rosa recommended Lynch’s termination, and the HR department issued a termination letter dated November 17, 2008, which provides: “After a review of your academic qualifications we have determined that you do not meet the minimum qualifications to teach in your current subject matter area.”
Lynch identifies John Donnenwirth as a similarly situated individual whom ITT retained. Donnenwirth, who also teaches IT, is white and was born in 1960, making him twenty-one years younger than Lynch. Donnenwirth earned a bachelor’s degree in Mathematics from Ohio State University and a master’s degree in Business Administration from Dominican University. Despite that neither Mathematics nor Business Administration is related to IT, it was never determined that Donnenwirth was unqualified to teach IT. Unlike Lynch, however, Donnenwirth has earned fifteen semester hours in the subject of IT.
Lynch filed a complaint in the district court against ITT and Darosa, raising claims of age and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and Chapter 4112 of the Ohio Revised Code. ITT and Darosa moved for summary judgment, seeking dismissal of all of Lynch’s claims. The district court granted the motion. It ruled that Lynch failed to establish the fourth prima facie element, reasoning that Don-nenwirth is not similarly situated because he meets the coursework requirement and has several professional certifications in the area of his teaching. It also found that Lynch failed to demonstrate pretext. According to the district court, Lynch did not satisfy the requirements of the job description, and the only evidence of discriminatory animus that he offered was mere personal belief, conjecture, and speculation. This appeal followed.
II.
We review de novo a district court’s grant of summary judgment. Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a); CareToLive v. FDA 631 F.3d 336, 340 (6th Cir.2011).
A.
■ For claims based on circumstantial evidence, a plaintiff alleging that his termination was discriminatory must establish the following four elements: (1) he is a member of a protected class; (2) he is *444 qualified for the position in question; (3) he suffered an adverse employment action; and (4) he was treated differently than a similarly situated employee outside the protected class. Arendale v. City of Memphis, 519 F.3d 587, 603 (6th Cir.2008); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The parties agree that Lynch has established the first three elements but dispute whether there exists a genuine issue of material fact on the fourth.
A court’s formulation of the similarly situated inquiry should not be exceedingly narrow. Jackson v. FedEx Corporate Servs., 518 F.3d 388, 396 (6th Cir.2008). We consider individuals to be similarly situated if they are similar (though not identical) in all relevant respects. See Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 353 (6th Cir.1998). Our task is to make an individualized determination of which factors are relevant based on the factual context of the case. Id. at 352.
Given the factual context of this case, we consider it relevant that Lynch is an instructor at ITT and has neither a bachelor’s degree in a related area nor fifteen semester hours in the subject of his teaching. Thus, Lynch must identify a younger, Caucasian instructor who has neither a bachelor’s degree in a related area nor fifteen semester hours in the subject of his or her teaching but.who was retained. For this purpose, Lynch points to Donnenwirth, a younger, white instructor whom ITT retained.[1] Lynch is correct that Donnenwirth’s bachelor’s degree in Mathematics is not related to IT, just as Lynch’s bachelor’s degree in Civil Engineering is not related to IT. However, Donnenwirth has earned fifteen semester hours in the subject of IT, whereas Lynch has not. Thus, while Donnenwirth may be similarly situated in some relevant respects, he is not similarly situated in all relevant respects.
Lynch argues that this analysis is contrary to Jackson, where this court criticized the district court’s narrow formulation of the similarly situated standard and blind adherence to the employer’s position regarding which skills and qualifications were relevant. Jackson, 518 F.3d at 396-97. Unlike the district court in Jackson, however, we have independently determined the relevant factors after considering the factual context of this case. Moreover, we do not read Jackson to stand for the inflexible position that an employer’s articulated reason for the termination can never be considered in the similarly situated inquiry. Indeed, we have held that some overlap in the McDonnell Douglas analysis is permissible. See White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 243 (6th Cir.2005) (reviewing the plaintiffs qualifications when analyzing the second and fourth prongs of the prima facie case under McDonnell Douglas did not imper-missibly conflate them). In this case, defining similarly situated as having neither a bachelor’s degree in a related area nor fifteen semester hours in the subject of his or her teaching is not overly narrow. Accordingly, we conclude that there is no genuine issue as to any material fact that Lynch failed to establish the fourth element of his prima facie case.[2]
*445 B.
Even assuming that Lynch established a prima facie case, the burden of production would shift to ITT and Darosa to articulate a legitimate nondiscriminatory reason for his termination. Leadbetter v. Gilley, 385 F.3d 683, 690 (6th Cir.2004). Lynch concedes that ITT and Darosa satisfy this burden. ITT and Darosa assert that Lynch was terminated because he lacks the qualifications required by the job description to teach IT. The burden would then return to Lynch to show that the proffered reason is merely a pretext for what is actually a discriminatory firing. Traditionally, this showing can be made through evidence that: (1) the reason has no basis in fact; (2) the reason does not actually motivate the adverse employment action; or (3) the reason is insufficient to explain the adverse employment action. Upshaw v. Ford Motor Co., 576 F.3d 576, 586 (6th Cir.2009). There is also support for establishing pretext “by offering evidence that the employer’s proffered reason ... was never used in the past to discharge an employee.” Smith v. Chrysler Corp., 155 F.3d 799, 805-06 (6th Cir.1998).
Lynch first argues that the articulated reason for his termination has no basis in fact because he does possess the necessary qualifications. Yet this directly contradicts Lynch’s own admission that his bachelor’s degree is not related to IT and he has not earned fifteen semester hours of IT. Further, on this record, we are unable to determine independently which courses listed on Lynch’s transcript count or should count as credits in the subject of IT. And although Lynch focuses on the fact that he was apparently deemed fully qualified to teach IT at the time of hire, this is not evidence that the proffered reason for his termination has no basis in fact. Cf. Upshaw, 576 F.3d at 586 (stating that “an admitted mistake ... constitutes a legitimate nondiscriminatory reason”). Lynch also points to alleged comments and actions by Contiguglia, which he argues show ageist and racial animosity. But such comments and actions are not evidence that Lynch in fact meets the requirements of the job description, though they could be relevant to another method of proving pretext. Similarly, the opinions of McClendon and Lewellen that Lynch is sufficiently qualified is not evidence that Lynch in fact holds a bachelor’s degree in an area related to IT and has earned fifteen semester hours of IT. Thus, Lynch has failed to demonstrate pretext under the first method.
Second, Lynch argues that the proffered reason did not actually motivate his termination. As evidence of this, he claims that the reason for his termination has shifted over the course of this litigation. But the record reflects, and Lynch previously admitted, that the proffered reason has always been that he failed to meet the requirements of the job description. Lynch also claims that comments made by Conti-guglia suggest that his termination was actually motivated by age and race. Con-tiguglia’s comments, however, were neither ageist nor racist. Indeed, none of the individuals deposed could recall Contigug-lia, or any employee for that matter, ever making a remark relating to Lynch’s age or race. Accordingly, Lynch has failed to demonstrate pretext under the second method.
Third, Lynch argues that the proffered reason is insufficient to explain his termination because (1) Donnenwirth is similarly situated but was retained, and (2) ITT failed to transfer Lynch to an open position for which he was qualified. These arguments likewise fail. For the reasons stated above, Donnenwirth is not similarly situated to Lynch. Further, Lynch has offered no evidence, aside from conjecture, *446 that an open position into which he could be transferred existed. Thus, he has not demonstrated pretext under the third method.
Lynch last argues that the proffered reason was never used in the past to discharge an employee. See Smith, 155 F.3d at 805-06. However, ITT offered evidence that it hired Gary Abramowski but later terminated him upon discovery that his degree was not from an accredited university as required by the job description. Therefore, Lynch is not the only person who has been fired for failure to meet the requirements of the job description. And although Abramowski was terminated after Lynch, as the district court properly reasoned, “his termination occurred well before the commencement of this law suit and there is no indication that this case influenced that decision in any way.” Accordingly, under any method, there is no genuine issue as to any material fact that Lynch has failed to demonstrate pretext.
III.
For these reasons, we affirm the district court’s grant of summary judgment.

. Although Donnenwirth happens to teach IT, the same subject that Lynch taught, we do not consider this to be a relevant factor for purposes of the similarly situated inquiry.

. We decline to consider Lynch’s alternative argument, raised for the first time in this appeal, that he established the fourth element through evidence that he was replaced by someone outside the protected class. See J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1489 (6th Cir.1991).