NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0559n.06

No. 14-1162

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| VINCENT MENSAH, | ) | **FILED** |
| | ) | Aug 07, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| MICHIGAN DEPARTMENT OF | ) | UNITED STATES DISTRICT |
| CORRECTIONS; PATRICIA CARUSO; | ) | COURT FOR THE EASTERN |
| RANDALL HAAS; HUGH WOLFENBARGER, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:   GIBBONS and STRANCH, Circuit Judges; REEVES, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.**   Vincent Mensah brought suit against his former employer, the Michigan Department of Corrections ("MDOC"), its Director Patricia Caruso, the Warden of Macomb Correctional Facility ("MCF") Hugh Wolfenbarger, and the MCF Deputy Warden Randall Haas, alleging discrimination on the basis of his national origin, retaliation for engaging in a protected activity, and hostile work environment. He now appeals the district court's grant of summary judgment in favor of the defendants on each claim. For the reasons stated below, we affirm.

I.

Vincent Mensah was born in Ghana. From 1997 until he resigned in 2009, he worked as a Business Manager for MCF. During the relevant time period, Mensah reported to

_____

[*]The Honorable Pamela L. Reeves, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

Wolfenbarger. From 2003 to 2009, Mensah filed numerous internal grievances and complaints with the Equal Employment Opportunity Commission ("EEOC") and Michigan Department of Civil Rights against defendants alleging retaliation, hostile work environment, and discrimination based on national origin. On June 29, 2009, Mensah filed a Charge of Discrimination with the EEOC against the defendants alleging the same. On May 19, 2010, the EEOC issued Mensah a right-to sue-letter on this Charge.

On August 13, 2010, Mensah filed a complaint in the district court alleging eight different causes of action against the Department, its Director Patricia Caruso, Warden Wolfenbarger, and Deputy Warden Haas. The defendants filed a motion to dismiss and the trial court granted defendants' motion in part. Defendant Caruso was completely dismissed from the lawsuit and the only claims remaining were (1) Title VII claims against MDOC; (2) § 1981 claims against Wolfenbarger and Haas; (3) § 1983 equal protection claims against Wolfenbarger and Haas; and (4) Elliot-Larson Civil Rights Act ("ELCRA") claims against Wolfenbarger and Haas. The remaining defendants appealed part of the trial court's order, and on February 4, 2013, the Sixth Circuit dismissed that appeal in *Mensah v. Michigan Dep't of Corr.*, 513 F. App'x 537 (6th Cir. 2013). Following discovery, the defendants filed a motion for summary judgment seeking dismissal of Mensah's remaining claims. The district court granted the defendants' motion on all claims. Mensah timely appeals that decision.

II.

A district court's order granting summary judgment is reviewed *de novo*. *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 706 (6th Cir. 2006). The district court's grant of summary judgment will be affirmed "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

2

entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). If the nonmovant presents evidence that raises a genuine issue of material fact when viewed in the light most favorable to the nonmoving party, summary judgment is inappropriate. *Wright*, 455 F.3d at 706.

A.

Mensah claims he was discriminated against during his employment at MCF based on his race and/or national origin because (1) he was denied a request for annual leave; (2) he had to notify Wolfenbarger, his supervisor, when he arrived to work in the morning and when he left MCF; (3) he had to carry his ID badge on him while working; (4) Wolfenbarger told other employees to watch Mensah's whereabouts; (5) he was not allowed to work flex time; (6) he had to participate in a drill that involved checking vehicles outside during winter; (7) he had to filter any instructions he had for an employee under his supervision through Wolfenbarger; (8) he was given an employee performance evaluation that (a) gave him a "needs improvement" rating, (b) obliged him to get permission to leave the facility, and (c) prohibited him from emailing Wolfenbarger; and (9) he was disciplined with a five-day suspension, which was subsequently reduced to a written reprimand, for being absent during a mobilization drill. Mensah brings all of these complaints against Wolfenbarger and the MDOC; Mensah only includes Haas in his complaint concerning the winter security drill.

Under Title VII and the ELCRA,[1] Mensah may prove race and/or national origin discrimination with circumstantial evidence under the *McDonnell-Douglas* burden-shifting framework. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Under that framework, Mensah must first make out a *prima facie* case of race or national origin discrimination by

---

[1] "Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

demonstrating that he (i) was a member of a protected class, (ii) was qualified for the position, (iii) suffered an adverse employment action, and was (iv) "treated differently than similarly situated non-protected employees." *Newman v. Fed. Express Corp.,* 266 F.3d 401, 406 (6th Cir. 2001). Defendants argue that Mensah cannot fulfill the last two elements; we agree.

"An adverse employment action in the context of a Title VII discrimination claim is a materially adverse change in the terms or conditions of employment because of the employer's actions." *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 625 (6th Cir. 2013) (internal quotation marks omitted). Termination, decrease in wage or salary, change in title, diminished material responsibilities, or a material loss of benefits are all examples of a materially adverse change. *Id.* As the district court observed, most of the actions Mensah complains of do not amount to adverse employment actions. Only the suspension can even arguably be considered a truly adverse employment action. [2] Assuming without deciding that his suspension, later reduced to a reprimand, constitutes an adverse employment action, Mensah has not pointed to a similarly situated employee.

Before analyzing the final element, we discuss the circumstances leading to Mensah's five-day suspension. In July of 2007, MDOC held a mobilization drill at MCF. During this "emergency preparedness" exercise, the facility was locked down and all individuals were accounted for. Mensah could not be located despite punching in for his shift earlier that day. Because of his absence and his alleged failure to cooperate with an investigator regarding the incident, Mensah received a five-day suspension, which was subsequently reduced to a

---

[2] The district court suggests that a performance review plan can constitute an adverse employment action. While true, this court has made clear that in general a negative performance review unaccompanied by a change of position or a loss of pay is not an adverse employment action. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008). Therefore, we will not consider Mensah's negative performance evaluation in analyzing his discrimination claim.

4

reprimand. However, Joe Wade, another employee also marked absent during the drill, was never disciplined for his absence.

Mensah asserts that the district court applied an overly narrow construction of the similarly situated standard. Specifically, he contends that the district court improperly applied the standard in *Mitchell v. Toledo*, 964 F.2d 577, 583 (6th Cir. 1992), by too narrowly construing its requirement that the employee to whom the plaintiff compares his treatment must be similarly-situated "in all respects." Undoubtedly, this circuit has determined that "the appropriate test is to look at those factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects." *Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 394 (6th Cir. 2008) (citing *Ercegovich v. Goodyear Tire and Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). "Courts should not assume . . . that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances," *Jackson*, 518 F.3d at 394 (quoting *Ercegovich*, 154 F.3d at 352), but should make "an individualized determination of which factors are relevant based on the factual context of the case." *Lynch v. ITT Educational Services, Inc.*, 571 F. App'x 440, 444 (6th Cir. 2014).

Here, Mensah argues that Wade, an American-born black male, is similarly situated for purposes of his discrimination claim. Mensah acknowledges that Wade held a different job title with fewer duties and responsibilities, and also concedes that, unlike Mensah, Wade did not report to the Warden. However, Mensah contends that the relevant factors here are that Wade (1) was born in America; (2) was also offsite when the drill was called; and (3) unlike Mensah, received no discipline.

Mensah fails to address Wolfenbarger's testimony that Wade received a counseling memo as opposed to discipline because he admitted that he was off grounds during the exercise

5

and fully cooperated in the investigation of the matter, whereas Mensah flatly refused to answer questions or cooperate with the investigation. According to Wolfenbarger, this distinguished the two infractions and made it appropriate to discipline Mensah but not Wade.

Here, neither Wade's position nor his relevant conduct was similar. Mensah was a high level employee who reported directly to the warden, whereas Wade was not. And Mensah was uncooperative in the investigation that followed the infraction, whereas Wade fully cooperated. Given the clear differences in both job responsibilities and conduct between the two employees, we cannot conclude that Wade is a legitimate comparator for Mensah though both were absent during the exercise. Because Mensah has failed to present a similarly-situated employee or show any other meaningful evidence supporting an inference of discrimination, he cannot establish his *prima facie* case of employment discrimination.

### B.

Mensah next argues that the district court incorrectly granted summary judgment in favor of the defendants on his hostile-work environment claim. To establish a *prima facie* case of a hostile work environment based on race and/or national origin, Mensah must demonstrate that: "(1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on plaintiff's protected status; (4) the harassment was sufficiently severe or pervasive to affect a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective or preventative actions." *Fullen v. City of Columbus*, 514 F. App'x 601, 606–07 (6th Cir. 2013) *cert. denied sub nom. Arnold v. City of Columbus, Ohio*, 134 S. Ct. 532 (2013). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*

6

*v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Id.* at 23. "A discriminatorily abusive work environment . . . can and often will detract from employees' job performance." *Id.* at 21.

Mensah alleges that the same actions that serve as the basis for his discrimination claim support his hostile work environment claim. The panel must ask whether this conduct, when taken in totality, is "sufficiently severe or pervasive to alter the conditions of [Mensah's] employment and create an abusive working environment." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011). Like the district court, we find Mensah has failed to muster facts from which a reasonable jury could conclude that, based on the totality of the circumstances, he was subjected to a hostile work environment. Most of the conduct on which Mensah relies, except possibly the suspension and the poor review, amounted to mere inconveniences. The record suggests the existence of an interpersonal conflict between Mensah and Wolfenbarger, but Mensah has failed to show that Wolfenbarger's behavior was connected to or motivated by national origin and/or racial animus. Notably, Mensah cannot point to any explicit references to race or national origin. As a result, Mensah cannot demonstrate the third and fourth element of a *prima facie* case of a hostile work environment.

C.

Finally, Mensah claims, rather perfunctorily, that Wolfenbarger's interference with the administrative processing of the charges amounted to "severe or pervasive retaliatory harassment

7

by a supervisor."[3] (Appellant's Br. 30) (quoting *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995 (6th Cir. 2009)).

To establish a *prima facie* case of retaliation, Mensah must show that (1) he engaged in protected activity; (2) the defendant knew of the protected activity; (3) "defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment." *Hunter*, 585 F.3d at 996 (internal quotation marks omitted). Mensah must be able to show but-for causation, *i.e.*, "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

Here, because Mensah filed numerous internal EEO charges of which Wolfenbarger was aware, the first and second elements of the *prima facie* case are easily satisfied. With regards to the third prong—whether there was an adverse employment action—Mensah alleges that it is satisfied because Wolfenbarger prevented Mensah's charges from being processed administratively. But Mensah has not cited any evidence in the record that suggests his access to internal grievance procedures was limited or that his complaints were inappropriately processed. As such, this court finds that Mensah was not subjected to an adverse employment action.

---

[3] The district court order points out Mensah's other allegations of retaliation: "[Mensah] says Wofenbarger retaliated against him while he worked at MCF by: (1) denying his request for annual leave in 2005; (2) condoning and participating in the 2007 mobilization drill at MCF that resulted in his discipline; (3) initiating an investigation against him in January 2008; (4) issuing the 'needs improvement' employee performance evaluation; and (5) writing a memo to him and the Regional Prison Administration saying that [Mensah] should not have told other employees about the reduction in force." We could find no mention of these allegations in his response to the motion for summary judgment, nor does Mensah mention these alleged instances of retaliation in his appellate brief. Consequently, we will not address them here.

Alternatively, Mensah contends that the third element is also established by Wolfenbarger's severe or retaliatory harassment because of the "pervasive restrictions" placed on Mensah, and Wolfenbarger's "refusal[] to extend [Mensah] . . . professional consideration or courtesy." Unfortunately, however, he fails to point to anything in the record that might support severe and retaliatory harassment, and our court will not "mine a summary judgment record searching for nuggets of factual disputes to gild a party's argument." *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 915 (8th Cir. 2006). Consequently, because Mensah cannot prove the third element his *prima facie* case for retaliation must fail.

III.

For the foregoing reasons, the district court's grant of summary judgment is affirmed.